(August 5, 1924.)

CITY OF POCATELLO, a Municipal Corporation, Respondent, v. LYMAN FARGO, WILLIAM F. KAS-ISKA, DANIEL W. CHURCH, LILA FRANKLIN, Executrix, and CLARENCE E. FRANKLIN, Executor of the Estate of N. G. FRANKLIN, Deceased, and EARL C. WHITE, Appellants.

[242 Pac. 297.]

DEPOSIT OF PUBLIC MONEYS — TERM OF DEPOSITARY — POWERS OF CITIES—INVESTMENTS—TIME DEPOSIT OF FUNDS—TRANSITION IN CLASS OF CITIES—SURETIES—LIABILITY—IMMATERIAL DEPARTURES —ESTOPPEL.

1. A public depositary is a *quasi*-public official and its bond is an official bond, the statutes under which same is given being an integral part thereof.

2. Where neither the statute, ordinance nor bond fix the term of office of a depositary, the relation continues during the will of the parties, the designation of such depositary being subject to revocation by the obligee at any time.

3. The pronoun "her" used in the ordinance designating the depositary and the bond given pursuant thereto, referring to the incumbent in the treasurer's office, who was at the time a woman, does not limit the obligations of the bond to the term of that particular treasurer, the bond being the official bond of the depositary, and not of the treasurer.

4. A city has only such powers as are expressly conferred by its charter or by statute, and such as are clearly implied for the carrying out of the powers expressly granted.

5. A city must keep its funds on general deposit, or invest them only as authorized by law, and cannot dispose of or keep its funds in any other manner.

6. The taking of a time certificate of deposit for city funds already on deposit and protected by the depositary's bond is an unauthorized investment, and the money continues to be protected by the depositary bond. In case of the insolvency of the de-

Publisher's Note.

1. Designation, rights, duties and liabilities of depositaries, see notes in Ann. Cas. 1916B, 1239, 1250, 1255, 1261.

4. See 19 R. C. L. 768.

6. See 22 R. C. L. 226.

positary, the sureties on its bond are liable for the funds evidenced by such a certificate of deposit.

7. Where deposits have been made on the faith and credit of a bond, the sureties, being stockholders of the bank, cannot invoke immaterial variances and departures from the contract to escape liability.

8. The City of Pocatello became a city of the first class on May 6, 1921, and on May 13, 1921, the bank being insolvent closed. After the transition of said city in class, the sureties on the bond are not relieved from liability by reason thereof, a reasonable length of time being allowed for adjustment to new conditions and the taking of a new depositary bond conditioned as required by the law affecting cities of the first class.

9. A public depositary law governing deposit of funds of the various political subdivisions of the state became effective May 4, 1921, and the bank which had given a depositary bond under the prior law became insolvent and closed May 13, 1921, no new bond having been given in accordance with the new statute. *Held,* that the city had a reasonable time within which to procure a new bond and the lapse of nine days was not such an unreasonable' delay as would release the sureties from the obligations of the bond.

10. The designation of the bank as a depositary being recited in the bond, the sureties are estopped to deny that the ordinance making such designation was legally passed.

11. Where certain stockholders of a bank have signed a depositary bond as sureties, and the bank has for many years received large deposits of public funds on the strength thereof, they are estopped, after the insolvency of such bank, to question their liability.

APPEAL from the District Court of the Fifth Judicial District, for Bannock County. Hon. B. S. Varian, Presiding Judge.

Action to recover on a depositary bond which defendants had signed as sureties. Judgment for plaintiff. *Affirmed.*

O. O. Haga and H. B. Thompson, for Appellants.

The liability of a surety is *strictissimi juris* and cannot be extended by implication. He has the right to stand on the exact words of his contract, and his liability is limited to the exact language of his bond, and if the words will

not make him liable, nothing can. (*Dobbin & Evans v. Bradley,* 17 Wend. (N. Y.) 422; *State v. McFetridge,* 84 Wis. 743, 54 N. W. 1, 20 L. R. A. 223; *Miller v. Stewart,* 9 Wheat. (U. S.) 680, 6 L. ed. 189.)

Where sureties have consented to be bound to a certain extent only, their liability must be found within the terms of that consent strictly construed. (21 R. C. L. 975, 976.)

Where power or authority is given to a municipality it carries with it by implication the doing of those things necessary to make such things effective and complete, and a discretion as to the manner in which the power is to be carried out is not specifically provided. (*Veatch v. Gibson,* 29 Ida. 609, 160 Pac. 1112.)

An ordinance or resolution which is in effect an offer by a municipal corporation, upon acceptance by the party to whom it was addressed becomes a contract. (*Vincennes v. Citizens Gas Light Co.,* 132 Ind. 114, 31 N. E. 573, 16 L. R. A. 485; *Argus Co. v. Albany,* 55 N. Y. 495, 14 Am. Rep. 296.)

When an offer has been made to a municipal corporation, a vote of the municipal council accepting the offer will constitute a contract. (Note to 49 L. R. A., N. S., 380.)

"Her" is a personal pronoun referring exclusively to females. (21 Cyc. 433; 29 C. J. 347.)

Words are construed according to the context and approved usage of the language, and not otherwise. (C. S., sec. 9455; *Howard v. Grimes Pass Placer Min. Co.,* 21 Ida. 12, Ann. Cas. 1913C, 284, 120 Pac. 170.)

Under C. S., sec. 9456, "words used in the masculine gender, include the feminine and neuter," but the converse is not true, either under the statutes of Idaho or any other state, or under the accepted rules of ordinary good English. When words that have a definite meaning have been used, "we have no authority to pronounce any of them meaningless, if in the preceding language anything may be said which serves to fix its character or determine the office it was intended to perform." (*Kephart v. Buddecke,* 20 Colo. App. 546, 80 Pac. 501.)

It is fundamental that any agreement or dealing between the creditor and the principal which essentially varies the terms of the contract without the consent of the surety will release the surety from liability. (21 R. C. L. 1004; *Sprigg v. Mt. Pleasant Bank,* 14 Pet. 201, 10 L. ed. 419.)

And if the parties to the original contract think proper to change the terms of it without the surety's consent, he is thereby discharged. (*Reese v. United States,* 9 Wall. (U. S.) 13, 19 L. ed. 541; *Schuster v. Weiss,* 114 Mo. 158, 21 S. W. 438, 19 L. R. A. 182.)

"Generally, the surety is a favorite of the law, and should be held only where his liability is fixed by the most strict law. That is to say, what is known as the rule of *strictissimi juris* applies." (*City of Topeka v. Federal Union Surety Co.,* 213 Fed. 958, 130 C. C. A. 364; *United States Fidelity & Guaranty Co. v. Poetker,* 180 Ind. 255, 102 N. E. 372, L. R. A. 1917B, 984; *Whitestown v. Title Guaranty & Surety Co.,* 72 Misc. 498, 131 N. Y. Supp. 390; 148 App. Div. 900, 132 N. Y. Supp. 1149; *Atlantic Trust & Deposit Co. v. Town of Laurinburg,* 163 Fed. 690, 90 C. C. A. 274; *George A. Hormel & Co. v. American Bonding Co.,* 112 Minn. 288, 128 N. W. 12, 33 L. R. A., N. S., 513; *Board of Commissioners v. Greenleaf,* 80 Minn. 242, 83 N. W. 157.)

Rev. Codes, sec. 2261, did not authorize a general deposit when construed in harmony with C. S., sec. 8379. (*Fidelity State Bank v. North Fork Highway Dist.,* 35 Ida. 797, 209 Pac. 449; *Libby v. Pelham,* 30 Ida. 614, 166 Pac. 575, 31 A. L. R. 781.)

B. W. Davis and Frank T. Wyman, for Respondent.

Where neither statute nor agreement fixes the term of the depositary, the relation continues during the mutual will of the parties. (18 C. J. 591, 592; *Snattinger v. City of Topeka,* 80 Kan. 341, 102 Pac. 508.)

No effect can be given an unlawful attempt to take public funds out from under the protection of the depositary law

and place them in the same bank without the security of the depositary bond. (*Blaine County v. Fuld,* 31 Ida. 358, 171 Pac. 1138; *Board of Commissioners v. Security Bank,* 75 Minn. 174, 77 N. W. 815; *Board of Commrs. of St. Louis Co. v. American L. & T. Co.,* 75 Minn. 489, 78 N. W. 113; *Scott v. Whipple,* 119 Ga. 485, 46 S. E. 663; *McCormick v. Hopkins,* 287 Ill. 66, 122 N. E. 151.)

The statutes of this state authorized a general deposit by a city of its public funds in a bank where the safekeeping and return of those funds are under the protection of a depositary bond. (Sec. 65, Sess. Laws 1893, p. 111; *Critchfield v. Nance Co.,* 77 Neb. 807, 110 N. W. 538; *Caldwell v. King,* 84 Iowa, 228, 50 N. W. 975.)

The transition of Pocatello from a city of one class to another did not relieve from liability sureties upon depositary bonds. (*Snattinger v. City of Topeka,* 80 Kan. 341, 102 Pac. 508; *National S. & D. Co. v. Wilkinson Co.,* 109 Miss. 879, 69 So. 865; *State Nat. Bank v. Commonwealth,* 129 Ky. 637, 112 S. W. 678; *Zimmerman v. Chelsea Savings Bank,* 161 Mich. 691, 125 N. W. 424; *Commonwealth v. Caldwell,* 224 Pac. 103, 73 Atl. 219; *Board of Commissioners v. American L. & T. Co.,* 75 Minn. 489, 78 N. W. 113.)

A public depositary is a *quasi*-public official and its bond an official bond. (*Maryland Casualty Co. v. Pacific Co.,* 245 Fed. 831; *State v. United States Fidelity & G. Co.,* 81 Kan. 660, 106 Pac. 1040; *St. Louis Co. v. Security Bank,* 75 Minn. 174, 77 N. W. 815; *Hennepin Co. v. State Bank,* 64 Minn. 180, 66 N. W. 143; *Matter of Rothschild,* 109 App. Div. 546, 96 N. Y. Supp. 372; *State v. Pederson,* 135 Wis. 31, 114 N. W. 828.)

The statute becomes a part of an official bond given in pursuance of it. (*In re Fidelity State Bank,* 35 Ida. 797, 209 Pac. 449, 31 A. L. R. 781; *Southwestern S. Ins. Co. v. Davis,* 53 Okl. 332, 156 Pac. 213; *Henry v. Salmon,* 201 Mo. 136, 100 S. W. 20; *Trustees etc. of Bath v. McBride,* 81 Misc. 618, 142 N. Y. Supp. 1014; *Higdon v. Fields,* 6 Ala. App. 281, 60 So. 594; *Manley v. City of Atchison,* 9 Kan. 358; *Yeargain v. Board,* 90 Okl. 38, 215 Pac. 619; *State v.*

*Nutter,* 44 W. Va. 385, 30 S. E. 67; *Milliron v. Dittman,* 180 Cal. 443, 181 Pac. 779; *Wright v. McAdams Lumber Co.* (Tex. Civ.), 218 S. W. 571.)

On the question of estoppel, see 12 C. J. 769; Brandt on Suretyship, sec. 52; 18 C. J. 589; *State v. McDonald,* 4 Ida. 468, 95 Am. St. 137, 40 Pac. 312; *Talley v. State,* 121 Ark. 4, 180 S. W. 330; *Hennepin County v. State Bank,* 64 Minn. 180, 66 N. W. 143; *State v. United States Fidelity & G. Co.,* 81 Kan. 660, 106 Pac. 1040; *Jefferson v. McCarty,* 44 Minn. 26, 46 N. W. 140; *Thompson v. Rush,* 66 Neb. 758, 92 N. W. 1060; *Snattinger v. City of Topeka,* 80 Kan. 341, 102 Pac. 508; *United States Fidelity & G. Co. v. Woodson Co.,* 145 Fed. 144, 70 C. C. A. 114.

"The state is not ordinarily estopped by acts of misfeasance on the part of its officers nor does it contract with the sureties in an official bond given to it that other public officers shall perform their duties faithfully. Sureties upon such bonds are presumed to know this principle, and to consent to be bound by it." (*State v. Peterson,* 135 Wis. 31, 114 N. W. 828.)

Appellants were the bank's heavy stockholders; they were its managing executive officers and constituted at least a majority of its board of directors. A similar situation arose in *Mercantile Trust Co. v. Donk* (Mo.), 178 S. W. 113. They had a very keen personal interest in securing the designation of the bank as the city's depositary—a financial interest; they were themselves in a large measure the beneficiaries of that transaction. It is not upon sureties so situated that the law looks with such extreme favor nor is it to them that the courts apply the extreme doctrine *strictissimi juris.*

ADAIR, District Judge.—This action was instituted by the City of Pocatello against the defendants to recover the sum of $74,335.04, with interest thereon from May 12, 1921, based upon the alleged liability of the defendants on a depositary bond which they had signed as sureties, and which bond was executed and delivered to the City of Pocatello,

about July 2, 1915, to insure deposits of city funds made with the Bannock National Bank, it having become insolvent and closed to business on May 13, 1921. At the time the bank closed the plaintiff had on deposit therein the amount above specified, of which $32,000 was evidenced by a time certificate of deposit and the balance was on general deposit.

City Ordinance No. 364, which became effective July 26, 1915, was an ordinance "designating the First National Bank of Pocatello, Idaho, the Bannock National Bank and the Citizens Bank, Ltd., as depositaries for all of the funds of the city of Pocatello, Idaho, fixing the rate of interest to be charged on daily balances at three per cent per annum, and the manner of computing the same; directing monthly statements to be made; directing the treasurer of said city to keep on deposit in said banks in equal proportions all funds of every nature belonging to said city, and directing how said funds shall be handled."

Sec. 5 of the ordinance reads as follows:

"Section 5. Each bank named shall be required to give to the city of Pocatello, Idaho, a bond in the penal sum of not less than fifty thousand dollars to be approved by said city before the treasurer shall deposit any moneys with said bank or banks, which bond shall be conditioned upon the payment of interest and the full and faithful performance of the trust imposed by this ordinance."

Section 6 reads:

"Section 6. The treasurer of the city of Pocatello, Idaho, is hereby directed to deposit in equal and like proportions any and all funds in her possession or under her control and belonging to said city, or any funds which may come into her possession or under her control, and belonging to said city, during her incumbency in office with the banks named and in like amounts; that the said treasurer, shall immediately, upon the due and valid passage of this ordinance and upon the said banks executing the said bonds herein specified, make the deposits in the manner as herein provided; said treasurer shall make future deposits in like

proportions and shall check on said banks in like. proportions and keep as nearly as·practical at all time an equal and like division of the funds in each bank.''

Quotation of the remainder of the ordinance is not necessary, as these two sections cover the matters in controversy. The bond given pursuant thereto, dated July 31, 1915, following the formal part, which is in the usual form, is conditioned as follows:

''Whereas, the said principal, Bannock National Bank, has applied for a part of the current funds in the city treasury of the city of Pocatello, Idaho, to be deposited in said bank, and

''Whereas the city council of said city has passed an ordinance that one-third of the city funds shall be deposited in each of the following banks: First National Bank, Citizens Bank, Limited, and Bannock National Bank, the amount whereof shall be subject to withdrawal or diminution by the city treasurer of said city as the requirements of said city shall demand, and which amount may be increased or decreased as the treasurer may determine; and

''Whereas, said Bannock National Bank, in consideration of said deposit, and for the privilege of keeping said money, has agreed to pay to the city of Pocatello interest on said sum at the rate of three per cent (3%) per annum on the amount of said deposit, the same to be credited and paid quarterly upon the daily average of such amount as the said bank shall have on deposit for the quarter, or any fraction thereof, next preceding the crediting or payment of said interest, which said interest shall be computed and credited to the account of said city of Pocatello, and shall henceforth become a part of such deposit.

''Now, therefore, if said Bannock National Bank shall at the beginning of each and every month render to the city treasurer and city clerk a statement in duplicate showing the daily balance of the moneys of the city of Pocatello held by it during the month next preceding and the interest thereof, and shall well and truly keep all sums of money so deposited or to be deposited, as aforesaid, and the interest

thereon subject at all times to the check and order of the city treasurer of said city of Pocatello, as aforesaid, and shall pay over the same and any part thereof, upon the check or written demand of said city treasurer, and to her successor in office as shall be by her demanded, and shall calculate, credit and pay said interest, as aforesaid, and shall in all respects save and keep the city of Pocatello, Idaho, and the treasurer thereof harmless and indemnified for and by reason of making said deposit or deposits, then this obligation shall be void and of no effect, otherwise to remain in full force and virtue.''

At the time of the giving of this bond Kate Toombs, a woman, was city treasurer of Pocatello. Under this bond, a new one not having been taken, the city continued to make deposits with the said Bannock National Bank, during the term of office of Kate Toombs, and also during the terms of her successors in the office for approximately six years, and said bank continued acting as a depositary of said city until it was closed on May 13, 1921. During each succeeding administration from time to time this bond was examined and found to be satisfactory and large deposits of city funds were made in reliance upon it.

After the passage of the ordinance, other ordinances were passed by the city council designating other banks of Pocatello, as depositaries, but without canceling the designation of this bank as such. During the World War an ordinance was passed authorizing the purchase with city funds of $21,000 of United States Liberty bonds, one-third of which were deposited with each of the three banks named in said ordinance of July 26, 1915. During this six-year period the council authorized the treasurer to deposit some of its funds on time certificates of deposit, and he held such a certificate for $32,000 at the time the bank failed, said certificate bearing interest at the rate of four per cent per annum and being subject to payment only on notice or upon the expiration of the period of time stated therein.

The legislature during the session of 1921 passed what is known as the public depositary law, which became ef-

fective May 4, 1921. The City of Pocatello having attained a population of 15,000, after proclamation of the Governor pursuant to law, became a city of the first class upon the inauguration of the new administration on May 6, 1921.

Appellants, who were sureties on the above-mentioned bond, were at the time of its execution all stockholders in said bank, and all but one of them were directors and officers. Their status as such changed at times thereafter, by virtue of sales of stock, and at the time the bank closed its doors, only three of them were stockholders.

The appellants, by their answer, set up several affirmative defenses, all of which are hereafter discussed. From a judgment in favor of the plaintiff and against each of said defendants this appeal was taken.

Appellants have assigned forty-nine errors of law, upon which they rely for a reversal of the judgment entered in the court below. These may be summarized, grouped and considered under five main heads, viz.: (1) that the bond was not a continuing one and only covered Kate Toombs' term, as treasurer, from July 29, 1915, to May 10, 1917; (2) that the obligation of the bond did not extend to that portion of the city funds represented by the time certificate of deposit in the amount of $32,000; (3) that the contract guaranteed by the bond was broken by material alterations and departures, thereby relieving the sureties; (4) that the city was unauthorized by law to place money on general deposit, and therefore the bond never became binding upon the defendants; and finally (5) that the transition of Pocatello from a city of the second class to a city of the first class, discharged the bond as to these defendants. Appellants also rely upon alleged error in overruling their demurrers to plaintiff's complaint, and in the admission of evidence.

The length of this opinion, and the large number of adjudicated cases upon questions analogous to those involved here renders impracticable any extended review and analysis of all the authorities, and we shall not go beyond the citation of a few of the leading decisions in explanation of

our reasons for the determination of the various questions involved in this case.

The undertaking upon which this action is based is an ordinary depositary bond, signed by individual sureties. Its only purpose was to aid the Bannock National Bank in securing the use of a portion of the funds of the municipality and to indemnify the city therefor. It was the intention of all the parties, including the sureties themselves, that the bond should be and it was given and accepted solely for the purpose of protecting the public funds deposited with the bank. The bank, in effect, contracted with the city that it would safely keep the funds deposited with it, pay the same over upon the demand of the city treasurer, and "in all respects save and keep the city of Pocatello, Idaho, and the treasurer thereof harmless and indemnified." The bond was likewise conditioned to guarantee such contract, and the faithful performance of the duties of the said Bannock National Bank as a public depositary.

A public depositary is a *quasi*-public official and its bond is an official bond. (*Maryland Casualty Co. v. Pacific County*, 245 Fed. 831; *State v. United States Fidelity & Guaranty Co.*, 81 Kan. 660, 106 Pac. 1040; *Board of Commrs. of St. Louis Co. v. Security Bank of Duluth*, 75 Minn. 174, 77 N. W. 815; *Board of Commrs. of Hennepin County v. State Bank*, 64 Minn. 180, 66 N. W. 143.)

An official bond is construed and interpreted under somewhat different rules from those applicable to an ordinary surety contract. The doctrine of *strictissimi juris* does not apply. The statute becomes and is an integral part of an official bond given pursuant to it, and its conditions and limitations must be read into the bond. The object of an official bond is to insure the faithful performance of the duties of the office. The principal duty of the office of a depositary is to safely keep and return all public funds entrusted to it.

It is an established rule of law that the construction which sustains and vitalizes a contract is preferred, and should be adopted, rather than one which "strikes down

and paralyzes it." (*United States Fidelity & Guaranty Co. v. Board of Commrs. of Woodson County,* 145 Fed. 144, 76 C. C. A. 114.)

As well-recognized propositions of law, bearing upon the obligations of sureties generally and the extent and interpretation of their contracts, we call attention to and quote the following:

"A surety is a favorite of the law and never liable beyond the strict terms of his obligation. But his contract is nevertheless but an agreement, and like all other agreements it must receive a just and rational interpretation.

"The actual intent and meaning of the parties, when the agreement was made, deduced from the entire contract, from its subject matter, from the purpose of its execution, and from the situation and circumstances of the parties when they made it, must prevail over the dry words of the instrument, inapt expressions, and careless recitals therein, unless the intention runs counter to the plain sense of the binding words of the agreement." (*United States Fidelity & Guaranty Co. v. Board of Commrs. of Woodson County* (Kan.), *supra.*)

"As the undertaking of a surety is ordinarily identical with that of the principal, and their obligation is usually contemporaneous and joint, the general rule is to attribute to the obligation of a surety the same extent as that of the principal. . . . . If the terms of his engagement are general and unrestricted and embrace the entire subject his liability will be measured by that of the principal and embrace the same accessories and consequences. It will be presumed that he had in view the guaranty of the obligations his principal had assumed." (21 R. C. L. 975.)

"In brief, by strict construction of a contract of suretyship is meant that the obligation of a surety must not be extended to any other subject, or to any other person, or to any other period of time than is expressed or necessarily included in it; but the rule in no way interferes with the use of the ordinary tests by which the actual meaning and intention of the contracting parties are primarily deter-

mined. Despite the rule the courts, in endeavoring to ascertain the precise terms of the contract actually made by a surety, may resort to the same aids and invoke the same canons of interpretation which apply in case of other contracts, and they are not required to put a strained construction on the plain words of a bond in order that the sureties may escape liability. What is demanded is merely that the sureties are not to be bound by implication, or beyond the extent to which they have obligated themselves in the execution of the bond. While the liabilities of sureties are to be strictly construed, it is not the duty of courts to aid them to escape liability by technical and hypercritical construction." (21 R. C. L. 977.)

These statements of general propositions of law are founded upon the soundest principles of reason and public policy as well as upon respectable authority. The bond itself, and all the attending circumstances at the time of its execution and subsequently, clearly evidence the intention of all the contracting parties, that the sureties had bound themselves to indemnify the city against any defaults of the bank, until the bond was canceled in accordance with law, and the sureties are bound unless for some obvious reason their liability has been terminated.

An examination of the ordinance and the bond and a consideration of the purpose for which the bond was executed, clearly demonstrate that it was the intention of the parties that this undertaking should be a continuing depositary bond, and that none of these parties intended to restrict its obligations to the current term of the city treasurer then in office. It is true that the word "her" as employed in the bond and in the ordinance designating the depositary is not usually employed as a generic term. The use of that word, however, in these instruments does not necessarily import that it was the intention of the parties to limit the bond to the term of Kate Toombs. This was not an official bond of Kate Toombs as treasurer, but was the official bond of the Bannock National Bank as a public depositary. The use of the word "her" was perhaps an inapt

expression, and was undoubtedly employed because the incumbent of the office was at the time a woman.   There is no clause or expression in either the ordinance of July 26, 1915, or in the bond itself, expressly or by inference limiting the term of office of the bank as a depositary or the obligation of the bond to a definite period.   The use of the pronoun "her" in this ordinance and bond does not, as contended by appellants, limit the bond to the term of Kate Toombs' incumbency as treasurer.   While C. S., sec. 9456, does not expressly make the feminine gender include the masculine and neuter, when used in instruments of this character it is plainly intended that it shall.   An ordinance or law once legally passed, containing no clause of limitation, continues to be a valid law or ordinance until repealed. The bank was designated ás a depositary by said ordinance, and the bond was given to insure the proper performance of its duties as such so long as it continued to be such a depositary, or until the bond was otherwise canceled in accordance with law.

These sureties could have relieved themselves of further liability at any time had they cared to do so.   They were so connected with the bank that it must be presumed they knew that the city was continuing to deposit funds therein upon the strength of this bond, and they were content to permit such a situation to continue.

"Where neither statute nor agreement fixes the term of the depositary, the relation continues during the mutual will of the parties to the contract, and a designation will be presumed · to continue until a change is shown.   In such case the government may terminate the relationship whenever the public safety requires it, but only by notice of the election to withdraw the deposit.   The depositary may terminate the relationship only by notice of its election to that effect and the tender of the deposit."   (18 C. J. 592.)

"Where an agreement appointing a bank a depositary contained no provision for its termination, it is only terminable by notice, on the part of the treasurer that he elected to withdraw the deposit, or by the bank that it de-

sired to be relieved from its responsibility and tender of the existing deposit." (*State Nat. Bank v. Commonwealth*, 129 Ky. 637, 112 S. W. 678.)

In the case of *National Surety Co. v. Campbell*, 108 Wash. 596, 185 Pac. 602, the court said:

"Admitting the rule that in every doubtful case the presumption should be against a continuing guaranty, especially in the case of an uncompensated surety, yet where the indemnitor was a stockholder and director in the bank, was interested in seeing that it secured deposits of public funds, and knew that the purpose of the law was to require absolute security before the funds could be so deposited, which security must continue so long as the funds remained on deposit and in the light of that knowledge he contracted to indemnify the person providing that security, we can see no doubt of the indemnitor's intention. . . . . 'In the interpretation of indemnity contracts, the cardinal rule is that which applies to contracts generally, i. e., to ascertain the intention of the parties and to give effect to that intention if it can be done consistently with legal principles. Contracts of indemnity, therefore, must receive a reasonable construction so as to carry out, rather than defeat, the purpose for which they were executed. To this end they should neither, on the one hand, be so narrowly or technically interpreted as to frustrate their obvious design, nor on the other hand, so loosely or inartificially as to relieve the obligor from a liability within the scope or spirit of their terms. Where the general import of a contract is one of indemnity, it is the rule that all of the words used therein should be construed to be in harmony with, and subservient to, the general purpose of the bond. When applied, however, this rule should be in aid of the intention of the parties, and should not be employed to defeat their purpose. (14 R. C. L., p. 46.)' "

In *Snattinger v. City of Topeka*, 80 Kan. 341, 102 Pac. 509, the Kansas court held:

"A designation of a bank as a depositary is effectual so long as the city shall continue to deposit its funds in the

bank, and the bond given in pursuance of such designation is deemed to be a continuing obligation, upon which the sureties will continue to be liable for defaults, unless they have taken the necessary steps to terminate their liability on such bond.''

See, also, *Yeargain v. Board of Commrs. of Delaware County,* 90 Okl. 38, 215 Pac. 619.

The city authorities were without authority in law to make a designation of a depositary for any fixed or limited term. Such a designation would always be subject to rescission or revocation at the will of the city council. There is nothing in the circumstances of this case to indicate that it was understood or agreed by any of these parties that the designation of the Bannock National Bank was for any fixed or limited period of time. The designation or appointment of this bank as a public depositary was never revoked and no attempt was ever made by these appellants to relieve themselves from their obligation under the bond. Deposits were made year after year on the strength of this bond. We are of the opinion and hold that the depositary bond, the subject of this action, was a continuing obligation, and that it was not intended to be limited to the term of Kate Toombs as treasurer of Pocatello.

The sureties on the depositary bond were not released from liability, either in whole or *pro tanto* because of the $32,000 certificate of deposit held by the city at the time the bank failed. Such disposition of the city funds was unlawful, improper and an unwarranted usurpation of power.

''It is well settled that a municipal corporation has only such powers as are clearly and unmistakably granted to it by its charter or by other acts of the legislature, and consequently can exercise no powers not expressly granted to it, except those which are necessarily implied or incident to the powers expressly granted and those which are indispensable to the declared objects and purposes of the corporation. Any fair and reasonable doubt concerning the existence of the power, or any ambiguity in the statute upon which the assertion of the power rests, is to be resolved

against the corporation and the power denied." (19 R. C. L. 768; see, also, 28 Cyc. 258.)

"Such of these (powers) as are essential to the normal life of the corporation may be sustained as implied or incidental powers by liberal construction; but those which are merely convenient or useful cannot under our law be maintained and exercised." (28 Cyc. 261.)

All municipal corporations of the state of Idaho are required, by a proper construction or interpretation of our laws, to keep their funds at all times subject to immediate payment by their treasurers unless the legislature has specifically authorized or directed the deposit or investment thereof in some other manner. There is no implied right or power to place such funds by deposit, investment or otherwise, except on general deposit, subject to immediate payment as the public necessities require.

C. S., sec. 4046, in substance provides that the city treasurer is required to keep all money in his hands in such places of deposit as may be provided by ordinance in some regularly organized bank or banks, protected by a bond sufficient to save the city from any loss. Said section further provides that the treasurer may be directed by ordinance to make certain specific investments of any funds in his hands in securities of the United States, or of the state of Idaho, county bonds, highway bonds and local improvement district bonds of the city for which he is treasurer. No other statutory authority exists for the investment or deposit of city funds.

A certificate of deposit is in effect and may be defined as a receipt of a bank or banker generally framed in such a form as to constitute a promissory note, payable to the depositor or his order. (*State v. Patch*, 21 Mont. 534, 55 Pac. 108.) The certificate of deposit held by the treasurer of Pocatello conforms to this definition.

A deposit is a temporary disposition of money for safekeeping, and its temporary nature makes it distinguishable from an investment which carries with it a greater or less

degree of permanency. (*In re Law's Estate,* 144 Pa. 499, 22 Atl. 831, 14 L. R. A. 103.)

"Where a state treasurer places state funds in a national bank, subject to check, the bank giving security therefor, and agreeing to pay interest on daily balances, the transaction is a deposit, and not a loan." (*State of Nebraska v. First Nat. Bank,* 88 Fed. 947.)

"A deposit is where a sum of money is left with a banker for safekeeping, subject to order, and payable, not in the specific money deposited, but in an equal sum. It may or it may not bear interest, according to the agreement. While the relation between the depositor and the banker is that of debtor and creditor simply, the transaction cannot, in any proper sense, be regarded as a loan, unless the money is left, not for safekeeping, but for a fixed period, at interest, in which case the transaction assumes the characteristics of a loan." (*In re Law's Estate, supra; Hunt v. Hopley,* 120 Iowa, 695, 95 N. W. 205; *State v. McFetridge,* 84 Wis. 743, 54 N. W. 1, 20 L. R. A. 223.)

"An administrator is chargeable with money of his decedent deposited in a bank then solvent, taking therefor certificate of deposit payable after one year, with interest, and which money was lost by the subsequent insolvency of the bank, as the transaction is a loan, and not a deposit subject to be withdrawn at any time." (*Appeal of Baer,* 127 Pa. 360, 18 Atl. 1, 4 L. R. A. 609.)

The placing of $32,000 of the Pocatello city funds with the bank under a time certificate of deposit was in effect a loan to the bank on its promissory note payable in the future in accordance with its terms. This was an unauthorized attempt to invest those public funds. All of the money evidenced by said certificate was originally on general deposit with the Bannock National Bank, and the city officers in conjunction with the bank unlawfully attempted to change the character of the deposit in this manner. C. S., sec. 4046, expressly provides that a bond must be taken to protect any deposit. No new or different bond was given because of this certificate of deposit.

The attempt to transfer the money from general deposit to a time deposit was void and inoperative and the money continued to be protected by the bond under which it was originally deposited. No effect can be given to an unlawful attempt to take public funds from under the protection of the depositary law and place them in the bank without the security of a depositary bond. (*Blaine County v. Fuld,* 31 Ida. 358, 171 Pac. 1138; *Board of Commrs. v. Security Bank,* 75 Minn. 174, 77 N. W. 815; *Commissioners v. American L. & T. Co.,* 75 Minn. 489, 78 N. W. 113; *Scott v. Whipple,* 119 Ga. 485, 46 S. E. 663; *McCormick v. Hopkins,* 287 Ill. 66, 122 N. E. 151.)

In *Fidelity State Bank v. North Fork Highway District,* 35 Ida. 797, 209 Pac. 449, 31 A. L. R. 781, this court, where the officers of a highway district in violation of law deposited moneys in a bank without any contract of special deposit, held that the statutes of the state and its own decisions become a part of the contract of deposit and, since a general deposit in such a case is positively forbidden, the moneys were on special deposit.

In *Scott v. Whipple, supra,* the court held that an independent transaction between a receiver and the bank designated as a depositary, by which a demand deposit was changed to a time deposit, did not affect the liability of the bank's sureties, and where the bank failed before the certificate matured and the bond provided that the deposit should be forthcoming whenever demanded, the sureties were liable.

The law implies that the deposits were legally made in accordance with the law then in force affecting municipal deposits. In this case funds comprising this $32,-000 item were actually placed with the Bannock National Bank upon the strength and in reliance upon the security of the bond and must be held to have remained on general deposit as required by law. The attempt to thus improperly handle such funds did not relieve the sureties, nor lessen their liability on the depositary bond in question here.

It is contended by appellants that because during the World War the City of Pocatello purchased $21,000 in Liberty bonds, and at times subsequent to July 29, 1915, it designated different and additional banks as depositaries, and placed $32,000 in a time certificate of deposit, and did not at all times keep one-third of its funds on deposit with the Bannock National Bank, there were such departures from the original contract in connection with which this bond was executed that they are now exonerated from liability. We find no such material departures, from the contract between the city and the depositary, as would operate to discharge the sureties from liability. The evidence discloses the fact that one-third of the Liberty bonds purchased by the city were deposited with each of the three depositary banks. This investment of city funds, which is authorized by law, did change the form of the deposit temporarily, but it did not jeopardize nor affect the rights of these sureties in any manner nor increase their liability and they cannot now complain. It is true that other depositaries were later designated, and assuming that there was a definite contract by which the Bannock National Bank was to receive one-third of the city funds, the burden of proof was upon the appellants to show that it did not receive such portion thereof. There was no proof on that issue and the trial court correctly so found. The bank, with the implied consent of these sureties, continued to receive and hold large deposits of public funds under the bond in question during all the times mentioned in the complaint, notwithstanding these alleged departures from its contract.

Where faith and credit have been given to a bond executed by a bank designated as a depositary, and the bond has performed the function of obtaining for the bank public moneys, the sureties cannot invoke immaterial variances and departures to escape liability. (*Henry County v. Salmon*, 201 Mo. 136, 100 S. W. 20.) We conclude that there were no variances or departures

in this case such as would release these indemnitors on the bond in question here.

The fact that Pocatello became a city of the first class on May 6, 1921, seven days prior to the closing of the depositary, and that no new depositary bond was taken by reason of such transition in class, or in conformity with the Public Depositary Law (chap. 256, Laws of 1921), which became effective on May 4, 1921, does not release appellants from the obligations of the bond. No new deposit of funds was made on or after May 4, 1921, up to the time the bank closed on May 13, 1921. The indebtedness to the city existed on deposits made prior to the date the public depositary law became effective, and prior to the organization of Pocatello as a city of the first class. This new depositary statute does not require that a new bond shall be immediately taken, and does not declare all prior existing bonds to be void, but it does provide that when any bond is taken thereafter it shall be conditioned and given pursuant to said statute. At least a reasonable time after the organization of the new city government and the passage of the public depositary law might intervene before a new bond could be required to cover deposits made prior to those dates. A delay of nine days, under the circumstances, was not an unreasonable lapse of time. The bank was undoubtedly insolvent on May 4, 1921, and could neither have furnished a new depositary bond nor returned the sums deposited under the old one. This is a reasonable inference from the facts in the case. Had a demand for the return of the deposit been made on May 4th, or on May 6th, and the bank refused to comply therewith these sureties would have been liable for its default. Why, then, excuse them because of the lapse of seven or nine days?

In the case of *Snattinger v. City of Topeka, supra,* the Kansas court had under consideration a somewhat similar situation. Under laws passed in 1883 the mayor and city council had designated a bank as city depositary, and a bond was given. Later, in the year 1903, there was a revision of the law relative to cities and their

depositaries. The court held in effect that the sureties were liable although the steps prescribed by law in making the designation had not been complied with, and that in an action on the bond they were bound notwithstanding the changes in the form of the statutes.

It is contended by appellants that the ordinance of July 26, 1915, was never legally passed, and is void, and as a consequence there was no contract to be guaranteed by the bond in question. They are estopped from making this defense.

"The surety is estopped from denying any fact recited in the bond when by such denial he seeks to avoid the bond in an action between the parties to the bond." (*State v. McDonald,* 4 Ida. 468, 95 Am. St. 137, 40 Pac. 312.)

"Where the bank has received the deposit and acted as a depositary the bond is valid even though no preliminary order designating the bank as a depositary was in fact made." (*Henry County v. Salmon, supra.*)

The bank was at least a *de facto* depositary and the sureties are liable. (*Snattinger v. Topeka, supra.*)

The appellants also claim that the bond was never approved by the city council. This position is untenable.

"Until the contrary is made to appear, the law presumes that officers have discharged the duties which the law imposes upon them." (*Southwestern Surety Ins. Co. v. Davis,* 53 Okl. 332, 156 Pac. 213, citing *Southern Surety Co. v. Waits,* 45 Okl. 513, 146 Pac. 431.)

We think that in view of the fact that these sureties were each, at the time of the execution and delivery of the bond, heavy stockholders and most of them managing officers of the Bannock National Bank, and all deeply concerned in the promotion of the interests of that institution, and that by the giving of this bond the bank profited financially by securing the use of large sums of city funds, they should now be estopped from questioning their manifest liability. They knew they had signed this undertaking. They all knew, or by simple inquiry could have ascertained, that no new bond had ever been

given during all the time this bank was receiving these large deposits of public funds. Surely a bond with a $100,000 penalty was not so common or insignificant a matter as to entirely escape their memory. They could have withdrawn therefrom by proper procedure. They stood by and permitted these deposits to be made on the strength of this bond and should not now, after the insolvency of the bank, be permitted to evade their just obligation to reimburse the city for its loss through their bank.

The complaint states a cause of action, and the trial judge committed no error in overruling the demurrer thereto, nor in the admission of evidence at the trial. The judgment entered is amply sustained by the evidence and the law, and no error appearing in the record the judgment is affirmed. Costs awarded to respondent.

McCarthy, C. J., and Dunn, William A. Lee and Wm. E. Lee, JJ., concur.

(August 18, 1925.)

ON REHEARING.

DEPOSITARY LAW—DEPOSITARY ORDINANCE—AUTHORITY OF MUNICIPALITY—DEPOSITARY BOND—CONTRACT BETWEEN MUNICIPALITY AND SURETY ON DEPOSITARY BOND—CONSTRUCTION—AMENDMENT OF ORDINANCE UNDER WHICH BOND GIVEN—EFFECT OF AMENDMENT ON SURETY'S LIABILITY—MEASURE OF SURETY'S LIABILITY.

1.   The enactment of a depositary law for the purpose of safeguarding municipal funds carries with it the consent of the legislature to the relation of creditor and debtor between the municipality and the depositary bank and at least authorizes a general deposit of such funds.

2.   The enactment of a city ordinance on July 26, 1915, providing for the selection and designation of depositary banks and the giving of bonds therefor by such banks, as provided in Sess. Laws 1893, p. 97, sec. 65, was within the legislative power of the municipality.

3.   The depositary statute of 1893 placed no limitation on the kind of deposit a municipality could make thereunder in

Points Decided on Rehearing.

depositary banks. Legislative authority to deposit municipal funds in such a depositary is authority to make a time deposit thereof.

4. Under the depositary statute a municipality is authorized to make the best bargain it can with a depositary bank in the way of interest on its idle funds, and has the power, consistent with its financial requirements, and under the protection of a proper bond, to consent to conditions of repayment such as would be implied from the placing of moneys on time deposit.

5. When a depositary bond is approved as provided by law and the funds of the municipality placed on deposit in the depositary bank, the sureties on the bond become obligated for the faithful and full performance by the bank of the contract between it and the municipality, the terms of which contract are to be found in the depositary ordinance and bond, and by the terms of those instruments, properly construed, are the sureties bound.

6. A contract of surety must receive a just and reasonable interpretation. The actual intent and meaning of the parties when the agreement was entered into, as deduced from the contract as a whole, from its subject matter, from the purpose of its execution and from the situation of the parties when they made it, must control its construction.

7. *Held*, that in the instant · case an examination of the surety contract discloses that the city of Pocatello intended to make a general deposit in the depositary bank payable on demand and to obtain therefor a certain rate of interest on average daily balances, and that the sureties intended to assume an obligation for the payment of such general deposit on demand with the interest accruing.

8. *Held*, that the ordinance enacted by the City of Pocatello on Feb. 12, 1918, providing that the moneys of the city might be deposited on time deposit to bear interest at the rate of four per cent per annum, was a material amendment of the ordinance of July 26, 1915, and effected a material change in the contract between the city and the sureties on the theretofore existing depositary bond.

9. The surety contract, exactly as made, is the measure of the surety's liability. Any changes in the contract affecting the status of the surety, even though not injurious to him, have the effect of discharging him from liability.

Publisher's Note.

6. See 21 R. C. L. 975.

9. See 21 R. C. L. 1005.

10. *Held,* that in the instant case the time deposit of $32,000 waterworks fund money of the City of Pocatello with the Bannock National Bank is not within the undertaking of the sureties upon the bond in suit; that the bank never acquired title to said deposit, and that a right to the recovery thereof on behalf of the city does not exist as against appellant sureties.

APPEAL from the District Court of the Fifth Judicial District for Bannock County. Hon. B. S. Varian, Presiding Judge.

Action to recover on depositary bond which defendants had signed as sureties. Judgment for plaintiff affirmed on original hearing. *Affirmed* in part and *reversed* in part on rehearing.

B. W. Davis and Frank T. Wyman, for Respondents, file no brief on rehearing.

T. C. Coffin, for Appellants, Lila Franklin, Executrix, and Clarence E. Franklin, Executor.

If the public officer did not have the authority and power in the first instance to do the act which he sought to do or to make the contract which he sought to make, then that act and that contract cannot be ratified, and the municipality or other political subdivision whom the officer sought to represent cannot be bound thereby. (22 R. C. L., p. 460, sec. 122.)

A general deposit creates the relationship of debtor and creditor. It is a relationship established by a civil, legal contract cognizable in a court of law and enforceable in a court of law. By the creation of such relationship the title to the money deposited passes from the depositor to the depositary. (*State v. Thum,* 6 Ida. 323, 328, 55 Pac. 858; *National Bank of the Republic v. Millard,* 10 Wall. (77 U. S.) 152, 19 L. ed. 897, 899.)

A certificate of deposit is not a special deposit within the meaning of subd. 4 of C. S., sec. 8379. (1 Morse on Banks and Banking, 5th ed., secs. 297–309, pp. 562–581.)

A special deposit is "A deposit for safekeeping to be returned intact on demand, or for some specific purpose not contemplating a credit on general deposit." (3 R. C. L. 517; 1 Morse on Banks and Banking, 5th ed., sec. 183; 7 C. J. 630.)

A special deposit is in the nature of a bailment. The relationship of bailor and bailee is a purely legal relationship and a breach of the duties imposed by that relationship confers no jurisdiction whatever upon a court of equity. (*Young v. Mercantile Trust Co.*, 140 Fed. 61; affirmed in 145 Fed. 39, 75 C. C. A. 264.)

An unauthorized or unlawful deposit of public funds in a bank does not create a special deposit. Such unauthorized, and therefore unlawful, action gives rise to a trust *ex maleficio.* The bank being charged with notice of the officer's authority receives the money not on contract but charged with a trust. (C. S., sec. 8379; *Myers v. Board of Education,* 51 Kan. 87, 37 Am. St. 263, 32 Pac. 658; *State v. Midland State Bank,* 52 Neb. 1, 66 Am. St. 484, 71 N. W. 1011; *State v. Thum,* 6 Ida. 323, 55 Pac. 858; *Board v. Wilkinson,* 119 Mich. 655, 78 N. W. 893, 44 L. R. A. 493; *San Diego County v. California Nat. Bank,* 52 Fed. 59; *Independent School Dist. v. King,* 80 Iowa, 497, 45 N. W. 908; *Watts v. Cleveland,* 21 Okl. 231, 95 Pac. 771; 16 L. R. A., N. S., 918; *First National Bank v. Bunting & Co.,* 7 Ida. 27, 59 Pac. 929, 1106; *Yellowstone County v. First Trust & Sav. Bank,* 46 Mont. 439, 128 Pac. 596; *Franklin Nat. Bank v. The City of Newark,* 96 Ohio St. 453, 118 N. E. 117; *Page County v. Rose,* 130 Iowa, 296, 106 N. W. 744, 5 L. R. A., N. S., 886; *Board of Commrs. v. Strawn,* 157 Fed. 49, 84 C. C. A. 553, 15 L. R. A., N. S., 1100.)

O. O. Haga and H. B. Thompson, for Appellants.

The defendants merely bound themselves to repay public funds deposited in a bank that was in no sense an official bank or an official depositary under the statutes

having certain public duties to perform by reason of the deposit. (*Illinois Surety Co. v. United States,* 226 Fed. 665, 141 C. C. A. 421.)

"It follows that the relation between the depositary and the county is that of debtor and creditor; that the depositary does not occupy the relation of a public officer having charge of public funds, which he may not use; and that the bond in suit is not, in a strict sense, an official bond." (*Henry County v. Salmon,* 201 Mo. 136, 163, 100 S. W. 20; *Barrett v. Stoddard County,* 246 Mo. 501, 511, 152 S. W. 43; *Brown v. Wyandotte Co.,* 58 Kan. 672, 50 Pac. 888; *Colquitt v. Simpson & Ledbetter,* 72 Ga. 501.)

BUDGE, J.—On January 23, 1925, a petition for rehearing was granted, and thereafter a reargument was had and the case again resubmitted. We have carefully re-examined the record and have reached the conclusion that the former opinion is correct in so far as it affects the liability of the appellant bondsmen for the moneys held by the Bannock National Bank on general deposit, viz.: the sum of $42,335.04. We will consider whether the obligation of the bond extends to a time deposit of $32,000 waterworks fund money made by the city treasurer March 26, 1919, evidenced by a time certificate of deposit issued by the bank on that date and renewed by succeeding city treasurers.

The depositary bond signed by the principal and sureties on July 7, 1915, contains the following conditions; "Now, therefore, if said Bannock National Bank shall at the beginning of each and every month (1) render to the city treasurer and city clerk a statement in duplicate showing the daily balance of the monies of the city of Pocatello held by it during the month next preceding and the interest thereof, and (2) shall well and truly keep all sums of money so deposited or to be deposited, as aforesaid, and the interest thereon subject at all times to the check and order of the city treasurer of said city of Pocatello, as aforesaid, and (3) shall pay over the

same and any part thereof, upon the check or written demand of said city treasurer, and to her successor in office as shall be by her demanded, and (4) shall calculate, credit and pay said interest, as aforesaid, and shall in all respects. save and keep the city of Pocatello, Idaho, and the treasurer thereof harmless and indemnified for and by reason of making such deposit or deposits, then this obligation shall be void and of no effect, otherwise to remain in full force and virtue.''

On July 26, 1915, an ordinance was passed by the city of Pocatello, designating certain banks then doing business in said city as depositaries for all funds of the city of Pocatello. The ordinance provides that there shall be charged to the said banks designated as depositaries interest at the rate of three per cent per annum, payable quarterly to the said city on the average daily balances of the moneys of the city held in said banks, which said interest shall be credited quarterly to the account of said city of Pocatello. It requires that each bank shall render to the city treasurer and city clerk a statement in duplicate showing each day's balance of all funds belongin.g to the city and held in said banks, together with the interest thereon, for the month within which the statement is rendered. It stipulates that all deposits shall be subject to increase or decrease as shall be determined by the city treasurer, and the banks shall pay par value for any draft or warrant drawn by the city treasurer at date of maturity, provided there are sufficient funds on deposit belonging to said city to meet the draft or warrant. This ordinance further directs the city treasurer to deposit in equal and like proportion any and all funds in her possession or under her control and belonging to the city, or any funds which may come under her control, with the banks named in the ordinance, in like amount, upon the passage of the ordinance and the execution by the banks of the bonds therein specified, to make future deposits in like proportion and that she shall check on said banks in like proportion, and

keep as nearly as practicable at all times an equal division of the funds in said banks. The ordinance then requires that each bank therein named shall give to the City of Pocatello a bond in the penal sum of not less than $50,000 to be approved by the council, which bond shall be conditioned upon the payment of interest and the full and faithful performance of the trust imposed by the ordinance. The bond of July 7, 1915, before referred to, was the bond furnished by the Bannock National Bank as one of the designated depositaries, and is the bond upon which this suit is brought. The trial court found, upon sufficient evidence, that the bond was accepted and approved by the city council at a meeting held July 29, 1915.

On February 7, 1918, there was passed by the council and on February 12, 1918, approved by the mayor of the City of Pocatello, an ordinance re-enacting the provisions of the ordinance of July 26, 1915, before referred to, but adding the provision that there might be deposited equally in the depositary banks on *time deposit* such amounts of money as should be determined upon by the finance committee of the city council, which said sums so deposited should draw interest at the rate of four per cent per annum, credited quarterly, and be withdrawn only upon the signatures of the city treasurer and two members of the finance committee of the council.

On March 26, 1919, the city treasurer, presumably under such authority as the revised ordinance gave, by check signed by herself and countersigned by the mayor, withdrew from the Bannock National Bank $32,000 of waterworks fund money then on general deposit, and deposited the same amount on time deposit in that bank, taking therefor a time certificate of deposit bearing four per cent interest per annum. This certificate of deposit was renewed by succeeding city treasurers and was outstanding when the bank suspended business on May 13, 1921. It is stipulated that the records of the city treasurer show that a check dated March 26, 1919, upon the Bannock National Bank, in the sum of $32,000 was drawn

by the city treasurer and countersigned by the mayor; that such check was duly cashed by said bank, and that a time certificate of deposit was issued for the money so taken out of the general deposit.

The question that confronts us, one that has given more than usual concern, is: "Did the obligation of the bond extend to that portion of the city funds represented by the time certificate?"

The ordinance of July 26, 1915, upon which the city relies, was passed and such selection and designation of the depositary bank was made by authority of Session Laws 1893, page 97, sec. 65, re-enacted as Session Laws 1899, page 192, sec. 69, and continued by the codifier as R. C., sec. 2261, and C. L., sec. 2261, which statute provided that "the treasurer may be required to keep all moneys in his hands belonging to the corporation in such place or places of deposit as may be provided by ordinance, but no such ordinance shall be passed by which the custody of such money shall be taken from the treasurer and deposited elsewhere than in some regularly organized bank, nor without a bond to be taken from such bank in such penal sum and with such security as the council or board of trustees shall direct and approve sufficient to save the corporation from any loss, but such penal sum shall not be less than the estimated receipts for the current year from taxes and special assessments levied and to be levied by the corporation." The enactment of a depositary law has generally been held to be a consent to the relation of creditor and debtor between the municipality and the bank, and it may safely be taken that this statute at the very least authorized a general deposit. (*State v. Lowdermilk,* 23 Ariz. 574, 205 Pac. 915; *Lawson v. Baker,* (Tex. Civ.), 220 S. W. 260; *Henry County v. Salmon,* 201 Mo. 136, 100 S. W. 20; *Cadwell v. King,* 84 Iowa, 228, 50 N. W. 975; *State v. Bartley,* 39 Neb. 353, 58 N. W. 172, 23 L. R. A. 67.) And it is not unlawful for the municipality to require that the depositary pay interest. (*Mayor of New York v. National Broadway Bank,*

126 N. Y. 655, 27 N. E. 555; *National Surety Co. v. Mc-Cormick,* 268 Fed. 185; *McCormick v. Hopkins,* 287 Ill. 66, 122 N. E. 151.) The subject matter of the ordinance of July 26, 1915, was accordingly within the legislative power of the city.

The statute quoted remained the law until Session Laws 1919, chap. 105, effective May 8, 1919, amended it by a minor change in the language and by the addition of the proviso that "the treasurer may be directed and empowered by ordinance, to invest any money in his hands in securities of the United States government, or of the state of Idaho, county bonds, highway bonds, or in local improvement bonds of the city or village for which he is treasurer." This amendment was the first express authority to a municipality to invest any of its moneys, but we do not believe that its enactment was a realization by the legislature for the first time that municipalities had moneys in the nature of sinking funds accumulating for future liabilities, and accordingly a provision whereby they might earn interest, but rather was a response to a request of the federal government for the purpose of expressly authorizing investment in bonds of the Liberty loan and like issues, to which authority was annexed other provisions so that the statute might not be a temporary one only.

That a time deposit, equally with a general deposit, is a true deposit is upheld by general banking practice and by the cases of *National Surety Co. v. McCormick* and *McCormick v. Hopkins, supra.* These cases hold that authority to deposit is authority to make a time deposit. The statute of 1893 placed no limitation on the kind of a deposit a municipality could make thereunder; we add no limitation. We are of the opinion that the legislature must have known that sinking funds for the retirement of the bonds authorized by Laws 1891, page 53, would accumulate in the municipal treasury, that such funds ought to earn interest, and therefore left cities and villages free to contract for the payment of interest

by the banks. We think the municipality was authorized to make the best bargain it could in the way of interest on its moneys, and had the power, consistent with its financial requirements, under protection of proper bond, to consent to conditions of repayment such as would be implied from the placing of moneys on time deposit, and we therefore hold that in the instant case the city had authority to place its money on time deposit if properly secured. As a matter of practice, that has been the construction placed upon the statute by municipalities throughout the state.

By the passage of the ordinance of July 26, 1915, the city offered to deposit on general deposit in equal and like proportion in the banks named, any and all funds in the possession of the city treasurer, or which might come into her possession or under her control and belonging to the city, upon each bank furnishing a bond satisfactory to the city, conditioned in the penal sum and as required by the ordinance. The Bannock National Bank furnished the bond of July 7, 1915, conditioned as required by the ordinance that the bank should pay interest at the rate specified in the ordinance and pay over the principal and interest "upon the check or written demand of said city treasurer, and to her successors in office as shall be by her demanded," and upon the bank complying with those conditions then the "obligation to be void and of no effect." Upon the approval of such bond and the deposit of the city's moneys in the Bannock National Bank there then existed a contract between the city and the sureties, the terms of which were stated by the ordinance and bond. The sureties then became obligated for the faithful and full performance by the bank of the contract as contained in the ordinance and bond, and by these instruments properly construed, are the sureties bound.

In *United States Fidelity & Guaranty Co. v. Board of Commrs. of Woodson County*, 145 Fed. 144, 76 C. C. A. 114, a rule that is perhaps without exception to-day as

to sureties not for hire is stated as follows: "A surety is a favorite of the law, and never liable beyond the strict terms of his obligation. But his contract is, nevertheless, but an agreement, and, like all •other agreements, it must have a just and rational interpretation. The actual intent and meaning of the parties when the agreement was made, deduced from the entire contract, from its subject matter, from the purpose of its execution, and from the situation and circumstances of the parties when they made it" will govern its interpretation. The language of the contract in the present instance and the actual intent and meaning of the parties at the time they entered into it all point to the same thing, viz.: that the city intended a general deposit in the depositary bank payable on demand, and the receipt of a certain rate of interest on average daily balances, and that the sureties intended to assume an obligation for the payment on demand of such general deposit with the accrued interest. Had that remained the situation at all times from July, 1915, on, there would now be no question for the decision of this court. But the city on February 12, 1918, by ordinance provided that moneys of the city might be deposited on time deposit, to bear interest at the rate of four per cent per annum. That this was a material amendment of the ordinance of July 26, 1915, and therefore a material change in the contract of the sureties must be conceded. In the case of *Magee v. Manhattan Life Ins. Co.*, 92 U. S. 93, 23 L. ed. 699, the court uses the following language: "A surety is a 'favored debtor.' His rights are strictly guarded, both in law and in equity. The slightest fraud on the part of the creditor touching the contract annuls it. Any alteration after it is made, even though beneficial to the surety, has the same effect. His contract, exactly as made, is the measure of his liability, and if the case against him is not clearly within it, he is entitled to go acquit." It is an almost universal rule that sureties not for hire "are never held liable beyond the clear and

absolute terms and meaning of their undertakings; the liability of a surety is not to be extended by implication." (*Miller v. Stewart,* 9 Wheat. 680, 6 L. ed. 189; *Martin v. Thomas,* 24 How. 315, 16 L. ed. 689.) The present case is not one where a strict depositary law permitting but one kind of deposit is to be read into the contract, but a case where the amended ordinance permits two kinds of deposit, while the former ordinance under which the bond was given, together with the bond, refers to but one kind of deposit. We will not say that sureties not for hire are liable under any and all circumstances for moneys deposited in the depositary bank, nor will we stretch their obligation beyond that which they voluntarily assumed, and we therefore hold that the bond sued on did not cover time deposits.

In the present instance the amended ordinance of February 12, 1918, was authority for the withdrawal of money from the amount on general deposit in the Bannock National Bank. It was also authority for the city treasurer to place that money on time deposit had there been any bond furnished that would cover time deposits. The $32,000 was lawfully in the hands of the treasurer upon its withdrawal from the general deposit. There was a municipal depositary law or ordinance permitting both a general and a special deposit; there was a designation of a depositary for such time deposits but no qualification by the depositary for such time deposits, in that a bond had not been furnished and accepted that would cover such deposits, and there was a state law authorizing only special deposits where no depositary bond is given. Under the circumstances the treasurer should have redeposited the money on general deposit, to the extent that the depositary bond would cover, and place any excess on special deposit. This she did not do, and the time deposit must be deemed to be a deposit made without the protection of any bond whatever. If we held otherwise we should virtually rule that under every circumstance a depositary bond covers any kind of de-

41 Idaho—30

466    CITY OF POCATELLO *v.* FARGO.    [41 Idaho,

Opinion of the Court—William A. Lee, C. J., Specially Concurring.

posit in the depositary bank regardless of the terms of the bond and of the depositary law. The facts in this case differ from those in *Blaine County v. Fuld*, 31 Ida. 358, 171 Pac. 1138, in that the treasurer here had the lawful custody of the funds upon withdrawal, could thereafter lawfully make both a general and a special deposit, and had the general authority to make a time deposit had there been any qualification by the depositary.

We accordingly hold that the time deposit of $32,000 waterworks fund money is not within the undertaking of the sureties upon the bond in suit; that the bank never acquired title to this money, and that the city's right to recover the $32,000 does not exist as against appellant sureties.

The cause should therefore be remanded, with directions to the court below to modify its judgment in accordance with the views herein expressed, and it is so ordered. No costs are awarded upon this appeal.

Babcock, District Judge, concurs.

WILLIAM A. LEE, C. J., Specially Concurring.—The original opinion on this appeal was written by Adair, District Judge, sitting as a member of the court. It was concurred in by all members of the court then sitting. I think it is a clear discussion of the questions presented by the record and in the main I adhere to the views therein expressed. However, because there has remained some doubt about appellants being liable under the terms of the surety bond for the $32,000 included in the time certificate, and because of the importance of the question relating to the investment of public funds in this manner, it has been deemed advisable to grant a rehearing and give further consideration to the case.

That opinion, among other things, holds that a city has only such powers as are expressly conferred by charter or by statute, and such as are clearly implied for the carrying out of its powers expressly granted; that a city

must keep its funds on general deposit and invest them only as authorized by law and cannot dispose of or keep its funds in any other manner; that the taking of a time certificate of deposit for city funds already on deposit and protected by the depositary bond, is an unauthorized investment. I agree with the law as thus announced in the original opinion. Upon rehearing counsel for appellants appear to have presented their argument solely upon the theory that the court would adhere to this view. That it is so held cannot be questioned and respondent's counsel in their supplemental brief seem to concede its correctness, for they say when certain officers of the city arranged with the official depositary to change the manner in which the latter should hold the $32,000 of the city's funds, then on general deposit, so that thereafter such funds should be held on a time certificate, "all of these officers including the official depositary knew as a matter of law that the act was strictly forbidden by the statutes of this state. They knew as they were bound to know that this act might not lawfully be done."

Again on the trial of the cause below, when appellants sought to introduce the ordinance authorizing this change to a time deposit, respondent's counsel made the objection that "the city of Pocatello could not lawfully pass an ordinance containing the subject matter contained in this ordinance." Not only because all of the eminent counsel on both sides take this view, but also because a proper construction of the statute makes it so, there is no reason to doubt that the city is without authority to make a time deposit in any bank and that its attempt to do so, was in violation of law and the title to this $32,000 did not pass from the city to the bank.

If the investment of this money in a time certificate of the Bannock National Bank was "strictly forbidden by the statutes of this state," that is, if it was an unauthorized investment, title to the same could not have passed from the city to the bank under the long-established rule first declared in *State v. Thum,* 6 Ida. 323, 55 Pac. 858, and

468        CITY OF POCATELLO v. FARGO.        [41 Idaho,

Opinion of the Court—William A. Lee, C. J., Specially Concurring.

again in *First Nat. Bank v. C. Bunting & Co.*, 7 Ida. 27, 59 Pac. 929, 1106, and in numerous cases that have since followed that rule. I think the rule of these cases is based upon a sound public policy and that a departure from it might lead to serious consequences against public interests and that the judgment in this case must be modified to the extent of holding that the $32,000 invested in a time certificate by the City of Pocatello in the Bannock National Bank, at the time of its failure, is not within the terms of the depositary bond, and the defendants in this action are not liable for this money.

I think it must be conceded, under C. S., sec. 4046, that the officials of the City of Pocatello were without any authority to withdraw this $32,000 from the Bannock National Bank, where it was on general deposit protected by the depositary bond, subject to payment upon demand with three per cent interest on the daily balances, and invest the same in a time certificate of deposit drawing four per cent interest. Such action is clearly contrary to the provisions of this statute and to the conditions of the depositary bond. The clause, "and shall well and truly keep all sums of money so deposited or to be deposited, as aforesaid," cannot by any judicial construction, be extended to any other class of deposits than that contemplated by the bond and authorized by law. If the city must keep its funds on general deposit or invest them only as authorized by law and cannot dispose of or keep its funds in any other manner, it cannot withdraw them from general deposit and invest such funds in the purchase of a time deposit and still hold the bondsmen liable. This would be tantamount to saying that the city, acting in violation of the Criminal Code in conjunction with the bank, may alter the conditions of the depositary bond without the knowledge or consent of the sureties.

C. S., sec. 8379, defines crimes against the revenue and property of the state. Subdivision four makes it a felony punishable for from one to ten years and disqualifies an officer doing so from ever holding any office in this state,

for such officer to deposit public money in a bank or with any banker or other person otherwise than on special deposit, or as otherwise authorized by law. A public official cannot create a contractual liability for the recovery of public money deposited in violation of the criminal statute referred to.

It is agreed that the city treasurer, acting under the mandate of a city ordinance, as such official drew her check against this $32,000 that was in the bank upon lawful deposit. She thereafter loaned this amount on a time certificate to the Bannock National Bank. If it were conceded that this was done merely by a bookkeeping transaction, whereby the bank upon the demand of the city officials, transferred this amount of city funds from a lawful deposit to an unlawful investment, it would not legalize the transaction.

When the treasurer drew her check for this $32,000 and the same was honored, the liability of the obligors on the depositary bond would be to that extent canceled. It was her duty to demand and receive payment only in lawful money. The bank was then a going concern and presumably able to meet its obligations. Her act in drawing this check against the city's general account was a perfectly legal transaction. Her subsequent act in investing the proceeds of this check in a time certificate of deposit of this bank, was an unauthorized and unlawful act that made her liable on her official bond. No duty rested upon the obligors of this depositary bond to prevent a wrongful diversion of these funds, after the money had been lawfully withdrawn from the bank. Nor would they be liable for an unlawful diversion by a loan to the bank or an investment in any of its securities, unless they were *particeps criminis* to the transaction, which is not claimed. The city treasurer's act in investing the proceeds of this check in a time certificate of deposit, whether in this bank or in any other bank, was unlawful and made her liable on her official bond and also brought the transaction within the inhibition of subdivision 4 of C. S., sec. 8379, which makes the deposit

of any portion of public money, in any bank or with any banker or other person, otherwise than on special deposit, or as otherwise authorized by law, a felony. The original deposit was made in accordance with C. S., sec. 4046, and therefore, ''as otherwise provided by law.'' The law limits the deposit of a city's money to one or the other of these methods. It must be either a special deposit or as prescribed by C. S., sec. 4046.

Because this indemnity bond, upon which this action is based, contains the condition that it ''shall well and truly keep all sums of money so deposited or to be deposited, as aforesaid,'' it is erroneously argued that the obligors are liable for any misapplication of any of the city's funds that have been at any time lawfully deposited, if such misapplication is done through the joint wrongful action of the city's officers with the same depositary, although done without the knowledge or consent of the bondsmen. It is conceded, however, that appellants are not liable under the terms of the bond, if the money had been lawfully withdrawn and taken to another depositary and misappropriated by a loan in the form of a time certificate. I am unable to see the distinction. The treasurer drew her check by command of the city council expressed in the form of an ordinance. While that part of the ordinance directing her to deposit these funds, when so drawn, in a time certificate, was in violation of law and void to that extent, either with or without the ordinance, she was authorized to withdraw this money upon her official order in the form of a check and when this was done it became a closed transaction and the funds were withdrawn from the bank and reposed in the custody of the treasurer and her subsequent act in thereafter making an unlawful investment, in that or in any other depositary, did not bring this second deposit within the terms of the bond. The words ''as aforesaid'' limit the liability of the obligors to require the bank to account for money that has been lawfully deposited and which has not thereafter been lawfully withdrawn. There is nothing in the terms of the bond that makes the bondsmen

insurers of the city's funds against subsequent misappropriations of this money by the city's officers, after it has been withdrawn in a lawful manner by the proper city officer.

Thus far I have considered the question solely upon the ground that appellants are not liable for the misappropriation of these funds by the joint wrongful action of the city treasurer and the Bannock National Bank when they invested the city's funds in a time certificate and such liability is not within the terms of the surety undertaking. To hold otherwise results in creating a new contractual relation with an additional liability of a higher rate of interest, and also making a contract that permits the city to invest its funds in any of the bank's securities. This change from a lawful deposit to an unlawful investment cannot create a new and different contractual relation between appellants and the City of Pocatello.

"A party who deposits money in a bank on general deposit voluntarily becomes a creditor of such bank and, impliedly, at least, agrees that the bank may commingle such money with its own, and use it until called for by such depositor. The relation of debtor and creditor arises by mutual consent." (*State v. Thum, supra.*)

It may be stated that this relationship of debtor and creditor arises by mutual consent whether the deposit be a general deposit subject to check, or a time deposit that may only be withdrawn under the terms of the agreement. Neither of these classes constitutes a special deposit, for a special deposit is where the whole contract is that the thing deposited shall be safely kept and the identical thing returned to the depositor. This contract may arise by express agreement or by the nature of the deposit, as if it were gold plate, or money, or securities locked in a box or sealed up in a package. (Morse on Banks and Banking, 5th ed., sec. 183, p. 413.) A special deposit is a delivery of the property, securities, or even money, to the bank for the purpose of having the same safely kept and the identical thing deposited returned to the depositor. The acceptance of a spe-

cial deposit imposes no duty on the bank except to keep the deposited article in safety and the deposit has no effect whatever on the title of the money or thing deposited, but the title remains in the depositor. (7 C. J., sec. 630.)

Soon after statehood, this court passed upon the legal relationship that arises out of an unlawful deposit of public money in a bank, in the case of *State v. Thum*, 6 Ida. 323, 55 Pac. 858. Thum was the receiver of Bunting & Co., bankers. The state treasurer, at a time when the law required all public officials charged with the safekeeping of public funds to maintain possession of such funds or place them on special deposit, deposited with Bunting & Company about $11,000 of state money. In a proceeding by the First National Bank of Pocatello, Bunting & Company was declared insolvent and Thum was appointed receiver of such defunct bank. By intervention upon relation of the auditor and attorney general, the state brought an action to have this deposit declared a special deposit and to give the state a preference for the amount that was being carried by the state treasurer in this bank upon general deposit prior to its insolvency. After a thorough and learned discussion of the question, the court declared that "public money deposited by a public officer in a bank, becomes a trust fund, and not a part of the estate of the bank, and, in case of the insolvency of the bank, its receiver must treat such fund as the property of the true owner, and not of the bank." In this discussion, Mr. Justice Quarles states the issue presented as follows:

"The contention of the respondent that public money deposited in a bank on general deposit, by a public officer, in violation of law, becomes the estate and property of the bank, the owner of the money so deposited, contrary to its will, becoming a mere creditor of the bank, raises the principal question in this case."

The ultimate conclusion reached by the court was that:

"The joint wrong and criminal act of the agent of the state and of the officers of the bank does not redound to the financial interest of the creditors of the bank. *The bank re-*

*ceived the money in trust for the true owner, the state.
It must be regarded as a trustee.''*

See, also, *First Nat. Bank v. C. Bunting & Co.,* 7 Ida.
27, 59 Pac. 929, 1106.

I do not deem it necessary to trace the history of this
doctrine, either since or prior to the rendition of these
opinions. The rule announced has been so often reaffirmed
in this court and its beneficent effects on the public inter-
ests are so apparent that I do not apprehend there is even
a probability that this court will depart from the doctrine
of those cases unless the statute law be changed. I accept
this as a correct rule of law controlling this case and all
other cases of a kindred nature. Then so far as this court
is concerned, it is irretrievably fixed, as a rule of substan-
tive law, that whenever public funds are deposited in a
bank contrary to the acts of the legislature defining the man-
ner in which such deposits or investments shall be made,
such unlawful attempt results in the creation of a trust in
such fund on behalf of the depositing unit; and no title
to such fund passes but remains in the depositing unit. If
such depositary has intermingled or disposed of that which
has been wrongfully deposited or invested, then the courts
are bound to declare a trust in favor of the depositing unit
against all of the estate of the bank with a preference as
against all other creditors equal to the money value of what-
ever has been so deposited or invested.

No argument or authority is necessary in support of the
proposition that the relationship between a trustee and a
*cestui que trust* is not a contractual relationship that arises
out of a mutual agreement of the parties. On the contrary,
the rights and obligations of the parties are created by
operation of an equitable principle of law, and the meeting
of the minds of the parties has nothing to do with the
creation of the liability on the part of the trustee or of the
beneficial interest of the *cestui que trust.* In the instant
case we must hold that the unlawful act between the city
authorities of Pocatello and the Bannock National Bank in
depositing $32,000 of the city's money on a time certificate

of deposit, created a contractual relation between the city and the bank and passed the city's title to this money to the bank, or hold that such unlawful act created the relationship of trustee and *cestui que trust*, with title remaining in the city. It is impossible that both conditions can arise out of such a transaction.

The act in all of its essentials was equivalent to the city's officials investing city funds in the securities of this bank. They might as lawfully have purchased its stock, any of its bills receivable, or any other asset which the city's officers believed was a good investment. If such an act can be upheld, all restrictions are removed with regard to how officials may invest funds belonging to the public. The amendment to C. S., sec. 4046, was passed in 1919. (Sess. L. 1919, p. 371.) Prior to this the city was without power to invest in the class of securities enumerated in this amendment, that is, government bonds and bonds of the state, etc. It is therefore idle to contend that a city or village has ever had authority to invest its funds in the assets of a bank or otherwise than as provided by this statute.

The City of Pocatello, loaning this $32,000 of its funds to this bank, upon its note in the form of a time certificate, was wholly unauthorized, in violation of law, and the title to this money never passed to the bank but resulted in creating a trust. Appellants' obligation to the city arises solely by virtue of a contractual obligation, the surety bond which they executed. This relationship cannot be materially altered or the terms of the agreement extended by the bank and the city without the consent of appellants.

We must either adhere to the rule announced in *State v. Thum, supra,* and *First Nat. Bank v. C. Bunting & Co., supra,* that the title to the money remained in the city and gave it a preference right against the estate of the defunct bank, or that the title passed to the bank and the relationship of debtor and creditor continued to exist with regard to this money placed upon time deposit. This latter view would result in the law, as announced in those cases, being no longer available to protect public funds wrongfully de-

posited. I am of the opinion that this court should not overrule or in any manner modify the law as expressed in those cases and that public funds should continue to be protected under this rule where such funds have been deposited or invested contrary to law, whether there be a sufficient indemnifying bond or not.

As supporting the rule announced in these cases, see the following: *Watts v. Commissioners of Cleveland Co.,* 21 Okl. 231, 95 Pac. 771, 16 L. R. A., N. S., 918; *Myers v. Board of Education,* 51 Kan. 87, 37 Am. St. 263, 32 Pac. 658; *Fire & Water Commrs. v. Wilkinson,* 119 Mich. 655, 78 N. W. 893, 44 L. R. A. 493; *San Diego Co. v. California Nat. Bank,* 52 Fed. 59; *The Ind. District of Boyer v. King,* 80 Iowa, 497, 45 N. W. 908; *Yellowstone Co. v. First Trust & Savings Bank,* 46 Mont. 439, 128 Pac. 596; *Board of Commrs. v. Strawn,* 157 Fed. 49; *State v. Midland State Bank,* 52 Neb. 1, 66 Am. St. 484, 71 N. W. 1011.

The only authorities to which my attention has been called or that I have been able to find supporting the contrary view, are two Minnesota cases: *Board of Commrs. v. Security Bank,* 75 Minn. 174, 77 N. W. 815; *Commissioners v. American Loan & Trust Co.,* 75 Minn. 489, 78 N. W. 113.

Some confusion seems to have arisen because of the language employed in some of the later decisions in this state that rely upon the rule as first announced in these earlier cases. I think the correct rule of these cases is that any attempt to place public money in a bank on general deposit when the officer is without statutory authority to do so is ineffectual to create the ordinary relationship of bailor and bailee, but does create the relationship of trustee and *cestui que trust,* with a preference right to recover against the entire estate of the trustee in case of insolvency, the title to the money or other things attempted to be deposited remaining in the *cestui que trust* and the right being enforceable only in equity. Public funds in the hands of an officer charged with their safekeeping, where there is no law authorizing a general deposit, may lawfully be placed in a

bank or other depositary for safekeeping, as a special deposit, thereby creating the relationship of bailor and bailee that gives rise to any suitable action at law for the recovery of such deposit in case it is not returned upon proper demand. (*Young v. Mercantile Co.*, 140 Fed. 39.)

I concur in that part of Mr. Justice Budge's opinion, holding: "That in the instant case the time deposit of $32,000 waterworks fund money of the city of Pocatello with the Bannock National Bank is not within the undertaking of the sureties upon the bond in suit; that the bank never acquired title to said deposit, and that a right to the recovery thereof on behalf of the city does not exist as against appellant sureties."

GIVENS, J., Dissenting.—On appellants' application, a rehearing was granted, and they lay special stress upon the point that the $32,000 certificate of deposit was not covered by the bond, and the attorney for the estate of N. G. Franklin, deceased, particularly urged that this $32,000 constituted a trust fund, his conclusion being that no contract covering its safekeeping existed between the city and the bank, and therefore the sureties were not liable.

A careful study of the facts and law bearing thereon has convinced me that there is no justification for the conclusion of the majority on this rehearing. It is established beyond the least peradventure of doubt that the $32,000 represented by a time certificate of deposit was originally placed in the bank on general deposit and under the protection of the bond. With this fact in mind the question for determination is the liability of the sureties on the bond. The sureties promised that the bank "shall well and truly keep all sums of money so deposited . . . . subject at all times to the check and order of the city treasurer . . . . and shall pay over the same upon the check of said city treasurer . . . . and shall in all respects save and keep the city . . . . harmless and indemnified for and by reason of making said deposit. . . . . "

The change in the nature and character of the deposit (if in fact there was any) constituted a plain violation of the condition of the bond that the bank would keep all sums of money so deposited subject to the check of the city treasurer. If, therefore, the manipulation on the part of the treasurer and the bank effected the placing of the funds then on general deposit in the bank, subject to check, on time deposit, not subject to check, the sureties were plainly liable, for they obligated themselves that the money placed on deposit would be kept on deposit subject to check. In the face of the express condition of the bond that the bank would keep all the money deposited by the city subject to the check of the treasurer, the opinion of the Chief Justice holds that because money deposited on a general checking account was thereafter, by the bank and the city treasurer, in violation of law, placed on time deposit, the sureties, some of whom were in active charge and control of the bank and of this deposit and who participated in taking the $32,000 from the protection of the bond and placing it on a time deposit, were discharged from their solemn obligation to the city. In my judgment, such holding is not supported by the decisions, and does violence to the contractual obligations of these parties. (*State ex rel. Carroll v. Corning State Savings Bank,* 136 Iowa, 79, 113 N. W. 500; *State v. United States Fidelity & Guaranty Co.,* 81 Kan. 660, 106 Pac. 1040.)

The bond was given to secure deposits in the bank and not to cover the liability of the treasurer, but by the terms of the bond it was incumbent on the bondsmen to see that the bank kept this money subject to check. While the treasurer might be liable on his bond for depositing the money in an account not subject to check, this would not relieve the bondsmen from their liability to see that the bank kept the money subject to check, and consequently the bondsmen are liable if the bank departed from the obligation of the bond. (*State ex rel. Carroll v. Corning State Savings Bank, supra.*)    The city, not the treasurer, was the obligee in the bond.

"The contention is that the arrangements and practices in respect to these state funds, as between the Treasurer and the bank, were illegal, and therefore not binding on the surety. If, instead of depositing the money for collection, as the law contemplates, it was in fact allowed by the Treasurer to remain in the bank for long periods, and a consideration was paid for its use, as appellants sought to show, may the bank set that up as a defense, when the state demands payment of the money which the bank has collected and holds, or is it any reason why the appellant should escape liability on the obligations written in the bond which it signed? . . . . If the bank made an improper use of the funds with or without the consent of the Treasurer, it will not avail the surety. Its liability is not contingent upon the neglect of the Treasurer or the legality of his action. . . . .

"The same question was involved to some extent in *Loper v. State,* 48 Kan. 540, 29 Pac. 687, where an illegal arrangement was made as to the deposit of county funds, and the county commissioners had contributed to it by failing to designate a depositary. The sureties on the bond of the defaulting treasurer, who under the arrangement had the use of the public funds, set up as a defense the neglect of the commissioners. In response to this, the court said: 'Parties cannot make an arrangement favoring the violation of a statute regulating the duties of a public officer, and, having obtained an advantage or profit thereby, ask that their liability upon the official bond of such officer be lessened or discharged because the statute was not complied with.' (*Rose v. Douglass Township,* 52 Kan. 451, 39 Am. St. 354, 34 Pac. 1046; *Hart v. United States,* 95 U. S. 316, 24 L. ed. 479; *Board of County Commrs. v. Security Bank,* 75 Minn. 174, 77 N. W. 815; *Estate of Ramsey v. People,* 197 Ill. 572, 90 Am. St. 177, 64 N. E. 549; *Stoeckle v. Lewis,* 8 Del. Ch. 150, 38 Atl. 1059; *Anderson v. Blair,* 121 Ga. 120, 48 S. E. 951; *State v. Pederson,* 135 Wis. 31, 114 N. W. 828; *Commonwealth v. Tate, etc.,* 89 Ky. 587, 13 S. W. 113; 27 A. & E. Ency. of L. 544.)'" (*State v. United*

*States Fidelity & Guaranty Co., supra.* See, also, *Scott v. Whipple,* 119 Ga. 485, 46 S. E. 663.)

It is said in the opinion of Justice Budge that the city treasurer withdrew $32,000, then on general deposit, and deposited it on time deposit. The city treasurer never at any time actually withdrew $32,000 on general deposit and placed it on time deposit. That the treasurer actually drew his check and the bank gave him a time certificate of deposit therefor is supported by the facts and the findings of the trial court, but it was a mere bookkeeping arrangement. Yet it is held that this so-called transfer of funds from a checking account to a time deposit, despite the condition of the bond that no such transfer would be made, discharged the sureties from their obligation.

It is unnecessary to consider whether or not this deposit was a trust fund, a bailment or a deposit as authorized by law, for, if authorized by law, it is clearly covered by the terms of the bond, and the bank not paying it, appellants are liable; if the deposit was not authorized by law, nevertheless if not made subject to check or order or demand, it was in violation of the terms of the bond and the bondsmen are liable therefor. Appellants contend it was a departure from the bond relieving them from liability, but, if anything, under the terms of the bond, it was a violation. I do not think it necessary to hold that giving a certificate of deposit was a proper or improper method of handling these funds, since it is immaterial on the question of appellants' liability. Such position is clearly correct because of the further provision of the bond that the bondsmen would, in all respects, "save and keep the city of Pocatello, Idaho, and the treasurer thereof, harmless and indemnified for and by reason of making of said deposit or deposits." If the bank did not keep the funds subject to check, it was as much a violation of the bond as its refusal or inability to pay upon proper demand. (*United States Fidelity & Guaranty Co. v. City of Pensacola,* 68 Fla. 357, Ann. Cas. 1916B, 1236, 67 So. 87.) In effect, the appellants say the bank and the treasurer did not violate but departed from the bond when

they did not comply with the terms of the bond requiring the deposit to be kept in a certain way and therefore, when the bank again violated the bond by not paying, the bondsmen are not liable. In other words, if the bond were only violated once, by nonpayment, the appellants admit liability, but if the bond be violated twice, because the deposit was not kept as the bond guaranteed it would be and by not being paid on demand, they were absolved. The statement carries its own refutation.

The majority opinion on rehearing entirely overlooks the provision of the bond to the effect that the bank, in the first instance, and the sureties, secondarily, were liable to see that the bank kept the funds subject to the check or order of the city treasurer, and that the bondsmen were obligated to save and keep the City of Pocatello, and the treasurer thereof, harmless and indemnified by reason of making said deposit or deposits.

In order to escape payment of the money lost to the city, the sureties invoked the rule *"strictissimi juris,"* and their liability is so measured, in the opinion of Justice Budge. There is no occasion here for this rule; it is not available to appellants. The trial court found "that said bond was not signed by defendants or any of them without consideration . . . . nor did defendants execute said bond as accommodation sureties without consideration." No question is made of the sufficiency of the evidence to sustain this finding. These sureties were stockholders, officers and directors of the bank. They applied for the deposit of the funds of the city and used them for years. They signed the bond for a valuable consideration. It is not such sureties as these who may successfully invoke the doctrine *"strictissimi juris."* But measuring liability by this strict rule, the sureties are, as held in the first opinion, plainly liable.

It is said that the facts of this case differ from *Blaine County v. Fuld,* 31 Ida. 358, 171 Pac. 1138. The turning point in each case is the same. In that case this court said that "no effect can be given to an unlawful attempt on the part of the county treasurer and county auditor to

take such funds out of the protection of the depositary law and place them on deposit in the same bank without the security of the depositary bond.'' In this case the same thing was attempted. About the only difference in the two cases is that in the Blaine county case the surety was not a party to what the court called an ''unlawful conspiracy,'' while in this case, in attempting to take the funds of the city from the protection of the depositary bond and place them on deposit in the same bank without the protection of the depositary bond, the sureties in charge of the bank were parties to the ''unlawful conspiracy.'' The case against the sureties here is stronger than in the Blaine county case but the result is the opposite.

All the parties to the bond knew that the $32,000 belonged to the city, that it was a public fund. They knew that it had been deposited according to law and that it was protected by the bond. The principal obligation of the bond was to save the city harmless and indemnified. Under the majority holding the sureties are released from their obligation to the city because the bank (operated by some of the sureties) and the city treasurer, without authority of law and in violation of a condition of the bond, attempted to take the city's funds from under the protection of the bond. I see neither reason nor justice in such a result.

The opinion of the Chief Justice is based on *State v. Thum,* 6 Ida. 323, 55 Pac. 858, which relates to a deposit made in violation of law. The Thum decision is not even an authority on the question before us; for here the deposit of the funds of the city on general deposit, under the protection of a bond, was not unlawful; and it was a long time after the funds of the city had been lawfully deposited that the bank and treasurer attempted to effect a change in the character of the deposit.

The length of the foregoing opinions precludes further discussion except to say that the opinions prepared by the Chief Justice and Justice Budge agree only in the result that the sureties are not liable for the $32,000. Otherwise they are as far apart as the poles. Despite extensive head-

notes, not a single rule of law is established by the two opinions.

No new point is made by appellants that the rate of interest on this $32,000 was increased to four per cent, whereas the bond provides for only three per cent, and that, by such change, the sureties were discharged. Though there is some conflict (*Bearse v. Lebowich,* 234 Mass. 492, 125 N. E. 621; *Schroyer v. Thompson,* 262 Pa. 282, 105 Atl. 274; *Schwartz v. Smith,* 143 App. Div. 297, 128 N. Y. Supp. 1; 32 Cyc. 185), this change was not so vital a part of the transaction as to relieve the sureties of liability to the extent to which they agreed to be liable, namely, three per cent.

Except as modified by what is herein stated, I adhere to the original opinion and dissent from the opinions of Justice Budge and the Chief Justice on rehearing.

Wm. E. Lee, J., concurs in the dissenting opinion of Givens, J.