CASE 73.—ACTION BY THE COMMONWEALTH AGAINST THE STATE NATIONAL BANK FOR INTEREST ON DE- POSITS AS DESIGNATED DEPOSITORY FOR THE STATE.—Oct. 8.

# State Nat. Bank v. Commonwealth

Appeal from Franklin Circuit Court.

R. L. STOUT, Circuit Judge.

Judgment for plaintiff, defendant appeals—Af- firmed.

1. Depositories—States—Public Funds—Contract—Termination.— Under Ky. St. 1903, section 4692, prescribing the manner of designating a State depository, but silent as to how long the depository shall act as such, in the absence of an agreement specifically fixing the time, the relation continues during the mutual will of the State Treasurer and the depository desig- nated.

2. Same—Notice.—Where an agreement appointing a bank a State depository contained no provision for its termination, it was terminable only by notice, on the part of the Treas- urer, that he elected to withdraw the deposit, or by the bank that it desired to be relieved from its responsibility and tender of the existing deposit.

3. Same—Bonds to Secure Deposits—Renewal.—Where a bank's bond to secure State deposits covered any delinquency of the bank, during such time as it should act, and contained the bank's agreement to pay 2½ per cent. interest on daily bal- ances, a renewal bond in the succeeding year did not relieve the obligors in the first bond from liability to the Common- wealth, as Ky. St. 1903, section 4693, providing for renewal bond was only to protect the State's interest.

4. Same—Liability for Interest.—Where when a bank refused to execute a renewal bond as State depository because of a contest for the office of State Treasurer, it was acting under a subsisting bond calling for 2½ per cent. interest on daily balances and no new bond was required, the bank having

State Nat. Bank v. Commonwealth.

continued to act as State depository during such contest was liable for the agreed interest on the deposits during such period, notwithstanding it deemed it unsafe to use the deposits during such time.

T. L. EDELEN for appellant.

## POINTS AND CITATIONS.

1. Under section 4692 of the Kentucky Statutes the contract for the payment of interest by State depositories required a positive agreement between the bank and the State Treasurer and this agreement was either, (a) during mutual will; or (b) during the term of office of the Treasurer; or (c) for a period of six months. The proof shows a positive refusal on the part of the bank to renew its agreement after the election of November 1899 until there should be an ascertainment by law of the result of that election.

2. The offer to compromise not having been accepted was not binding upon the bank for any purpose, and was not competent evidence against the bank.

HAZELRIGG, CHENAULT & HAZELRIGG and C. J. WHITTE-MORE for appellee.

1. We submit that the judgment should be in favor of the plaintiff for the full amount claimed with interest, because the appellant is bound by the original contract and never did anything to show that they considered it at an end. It takes two to make a contract and two to unmake it. Appellant had the money of the State and the right to use it and was amply protected by the law, and if it did not avail itself of either the opportunity to use the money or turn it over to proper persons, it held it at its peril and must pay for its use according to its contract.

2. The records show that in 1899 and 1900 there were five depositories for State funds in Kentucky, and that the appellant bank was the only one of the five that has attempted to avoid paying interest on the deposits because of the contest between the two political parties.

OPINION OF THE COURT BY WM. ROGERS CLAY, Commissioner—Affirming.

This is an action by the Commonwealth of Kentucky against the State National Bank, as one of the State depositories, to.recover of it the sum of $3,096 alleged to be due the Commonwealth for interest at the rate of 2½ per cent. per annum upon the daily balances on deposit during the first six months of the year 1900. In the year 1897 the Treasurer of the State of Kentucky designated appellant bank as one of the State depositories, and entered into an agreement with it whereby the bank promised to pay 2½ per cent. per annum on the daily balances on deposit. This agreement as to interest was inserted in the bond required by section 4693, Ky. St. 1903. On the 16th day of December, 1898, appellant renewed its bond, and continued thereafter to operate under the agreement to pay 2½ per cent. per annum on the daily balance. The bank continued to act as a depository during the first six months of the year 1900. These facts appear in plaintiff's petition. Appellant in its answer admits the execution of the two bonds referred to and the making of the contract in regard to interest. It also admits that up to January 1, 1900, it did pay to the Commonwealth of Kentucky interest at the agreed rate of 2½ per cent. per annum upon the daily balances in its hands. It then alleges that on the ——— day of January, 1900, that Walter R. Day, who had been elected and qualified and was then the acting Treasurer of Kentucky, requested appellant to renew its bond and continue to pay 2½ per cent. on the daily balance; that at the time of the request made by the said Day

there was impending a contest over the office of
Treasurer of the Commonwealth, which contest
threatened to make the affairs connected with the
treasury of the Commonwealth, and especially the
relation of appellant to the Commonwealth, so indefi-
nite and uncertain as to make it of no benefit or
advantage for appellant to act as depository, and that
thereupon, and for that reason, appellant declined to
renew said bond, and declined to extend further its
agreement with the Treasurer to pay interest upon
the State's deposits until the then impending contest
should be finally settled and determined; that during
the pendency of said contest, the duration of which
was then wholly uncertain and indeterminate, it was
compelled to keep, and did keep, in its vaults, prac-
tically without profit, the entire deposit of the Com-
monwealth with it, and during said time there was
no agreement between itself and the Treasurer of the
Commonwealth whereby it was to pay any interest
upon the State deposits until the termination of said
contest, and during said time it had no contract,
understanding, or agreement with the Treasurer of
appellee other than that written in the last dated
bond filed with the petition. The affirmative allega-
tions of the answer were controverted by reply. By
agreement the action was transferred to the equity
docket. Proof was then taken and the case submitted.
The trial court rendered judgment in favor of the
Commonwealth, and the State National Bank appeals.

Mr. Walter R. Day, the former Treasurer, testified
that he acted as Treasurer from January 1, 1900, to
February 26, 1900; that he called on Mr. Hoge to
renew his bond to the State; that at the time he re-
quested him to renew the bond Mr. Hoge inquired if
the old bond he had with Mr. Long would not be good

State Nat. Bank v. Commonwealth.

until June or July.. Witness told him he did not know, but would advise him later. Thereafter he consulted his attorney, and was informed that it would be good. He was of the opinion that he afterward told Mr. Hoge that the bond was all right until June or July of the year 1900. He did not recollect that Mr. Hoge told him he had terminated his contract with the State as a depository. The State National Bank continued to act as depository after January 1st. The funds were deposited with it and checked out. Did not remember that Mr. Hoge or any one else for the bank told him that the bank did not want to handle the State's money any longer.

Mr. George W. Long testified that he was Treasurer of the Commonwealth of Kentucky from 1896 to 1900. As Treasurer, he entered into a contract with the State National Bank to act as the State depository. He had no recollection of any notice having been served on him by the State National Bank that it did not longer want the deposit of the State. The bank did not refuse to accept any money that was offered for deposit. He did not remember having made out a bond for the State National Bank to send up to Mr. Hoge for execution after Mr. Day's election as Treasurer. It was possible he may have done so.

O. W. Long testified that he was Assistant Treasurer of. the Commonwealth of Kentucky from 1898 to 1900. During that time neither the president of the State National Bank, nor any other officer of that bank notified him that the contract entered into with his father (George W. Long) as State depository was terminated; nor had the bank notified him that it would no longer receive deposits. He did not remember taking a blank bond, at the request of the

Treasurer, to the State National Bank or any of its officers for the purpose of having it executed for the term beginning with the election of 1899.

S. W. Hager testified that he formerly held the office of State Treasurer. He assumed the duties on February 26, 1900. There were two depositories in the city of Frankfort—the State National Bank and the Farmers' Bank. Had a conversation with Col. Hoge, cashier, and Gen. Hewitt, president, of the State National Bank. Some money had been paid into his hands as Treasurer, and he wanted to deposit it as the law provided it should be deposited. He went to the officers of the State National Bank, as well as the officers of other banks in the city, with a view of making an agreement or having an understanding with them that he as Treasurer might withdraw from the bank any amount of money that might be deposited by him as Treasurer, and this agreement they declined to enter into, for the reason, as stated by them, that they were responsible to the State for any money that the bank as a depository might receive from any State officer, and that there was a controversy over the title to the office, and that they could not honor any check signed by him (Hager) as Treasurer. The conversation he had was in regard to money which he, as Treasurer, might deposit in the bank, and not in regard to the money which had been deposited by his predecessors. In the conversation had with the officers of the State National Bank not one of them indicated that the bank did not want to act as State depository any longer. The letter filed with Col. Hoge's deposition (which will be hereafter set out) referred only to such deposits that he, as Treasurer, might make.

For appellant, Mr. Charles E. Hoge, cashier, testi-

fied that the first contract made between the bank
and the State for State deposits was during Mr.
Henry S. Hale's term.  Under that contract the bank
was to pay 2½ per cent. maybe 2 per cent. on the
average daily balance.  This contract continued dur-
ing Mr. Hale's term.  Thereafter the bank made a
contract with Mr. Long.  The latter contract was to
pay 2½ per cent. on the daily balance.  Mr. Long's
term of office ended on the 1st day of January, 1900.
Before Mr. Long went out of office, he said he wanted
the bank to renew the bond and have it ready for the
new Treasurer when he came in.  The bank declined
to do that on account of the agitation and contest
being up.  Did not know who was going to be Treas-
urer.  Mr. Hager was the Democratic candidate in
1899.  Mr. Hager came to see him in February, and
wanted Gen. Hewitt and him to give a bond and make
a contract with him as State Treasurer.  This the
bank declined to do.  Wrote him a letter to that
effect on February 27, 1900.  After Mr. Hager was
declared the regular Treasurer, the bank renewed its
bond and agreed to pay 2½ per cent. on the daily
balance thereafter during his term of office.  The
reason of the bank's rejecting the State deposit was
that the contest going on made the deposits, so far
as the bank used them, absolutely worthless.  They
never used the money at all, because they were afraid
to use it, as they did not know when they would be
called upon for it.  They kept more money than was
due the State all the time from January until June,
when Mr. Hager qualified, in order to pay any checks
that they might make.  Their books would show that
state of facts.  When Mr. Day called on him for re-
newal bond, he refused to execute any.  After his
conversation with Mr. Day, the bank continued to do

the regular business as a State depository. The bank did not tender any resignation as State depository. They declined to make a new contract on account of not being able to use the money. The letter written by Gen. Hewitt and the witness to S. W. Hager is as follows: "February 27th, 1900. Hon. S. W. Hager, Frankfort, Ky:—Dear Sir: We have referred to our attorney the matter of your proposition to make the State National Bank a depository for the Commonwealth's funds upon condition that the bank will recognize you as Treasurer. We call your attention to the fact that these State depositories are required to execute bond to the Commonwealth, conditioned that the obligor would pay out the funds upon the check of the Treasurer. Any deposit you might make of the State's funds would, of course, be subject to this bond, no matter in what form or under whose name the deposit might be made. As long as it remains a matter of litigation who is legally entitled to the office of Treasurer, we deem it unwise for this bank to execute a bond for the payment of the State's money upon the check of any Treasurer, the title to whose office is in litigation. We trust you will appreciate that it is a matter of regret on the part of this bank and its directory that it is unable to accept your proposition. You will permit us to add that we hope when the title to the office shall have been finally adjudicated it will be possible for us to reopen negotiations looking to the end proposed. Very respectfully, Fayette Hewitt, President. Chas. E. Hoge, Cashier."

The provision of the Kentucky Statutes of 1903 with reference to depositories are as follows:

"Sec. 4692. The Treasurer shall designate in writing to the Governor to be entered on the Eexcutive

Journal, not less than three nor more than five solvent banks, each having a paid-up capital of not less than one hundred thousand dollars, as State depositories; and all public money of the State now in or hereafter received into the treasury shall be deposited in said depositories in amounts as nearly equal to the capital stock of the bank as convenience will permit; and the Governor or the Treasurer may from time to time, as may seem necessary, examine into the condition of the State depositories and the manner in which the State's account is therein kept; and if it shall at any time appear that the capital of any depository has become impaired, the Treasurer shall have power to cause the State's deposit to be withdrawn therefrom, and shall in like manner name another depository, which, when so named, shall, with its president and cashier, be subject to the provisions of this law. For services rendered by said depositories, there shall be no charges made of any character or description. The depositories selected shall each pay to the Commonwealth, in proportion to the deposits received, interest at such rate per annum as may be agreed upon between the Treasurer and the depositories upon the average daily deposits on hand at the close of banking hours, the same to be paid to the Treasurer at the end of each six months, commencing with the date of the deposit.

"Sec. 4693. Before any bank shall be named as depository, or permitted to receive the public funds, said bank shall execute to the Commonwealth of Kentucky a bond, with good sureties, worth, severally or jointly, not less than one hundred thousand dollars, to be approved by the Treasurer, conditioned that said bank will pay over, when demanded, all money deposited with it by the Treasurer, and otherwise

faithfully comply with the requirements of the law relating to it as a depository. The bond shall be filed with and be recorded by the Secretary of State, and shall be renewed at least once in every two years, and oftener if required by the Treasurer. The execution of this bond, or the deposit of the public funds in banks named as depositories, shall not in any wise diminish the liability of the Treasurer or his sureties upon this bond, or impair or delay the right of the Commonwealth to recover thereon for any loss or misapplication of the public funds, or other delinquency in office, nor shall the execution of the bond by the bank impair or delay in any way the right of the Commonwealth to recover from any delinquent or defaulting bank, or the officers or stockholders thereof, in the same manner as other depositors.''

It will be observed that section 4692 prescribes how a State depository shall be designated. The statute, however, is absolutely silent upon the question of how long such depository shall continue to act as such. We therefore conclude that, in the absence of an agreement specifically fixing the time, the relation continues during the mutual will of the State Treasurer and the bank designated as depository. In order to discontinue the relation, it is necessary that it should be done by some certain, unequivocal act denoting a positive intention to do so. In case the Treasurer elects to withdraw the deposit, he should notify the bank to that effect. In the event the bank desires to be relieved of its responsibility as State depository, it should notify the Treasurer accordingly, and at the same time turn over or tender the State deposit. Under this view of the case, did the State National Bank take the necessary steps to be relieved of its responsibility? The testimony

for the Commonwealth is to the effect that the bond was not renewed because such renewal was regarded as unnecessary. Mr. Hoge, cashier of appellant bank, contends that the bond was not renewed because the bank did not wish at that time to assume the responsibility of paying interest on deposits from which the bank could derive little or no profit. We will discuss this question from the standpoint of the bank entirely, and assume that its purpose in refusing to renew the bond is as claimed by its cashier, Mr. Hoge. In this connection, we must remember that the bond executed in the year 1897 was sufficient to cover any delinquency on the part of the bank during such time as it might act as depository. In that bond the bank contracted to pay interest at the rate of 2½ per cent. per annum, and this fact is not denied by the bank. The renewal bond executed in 1898 did not in any way relieve the obligors in the bond of 1897 from liability to the Commonwealth. The statute provides for a renewal bond merely for the purpose of protecting the interests of the State. Sureties may die or become insolvent. For that reason it is provided that the bond shall be renewed every two years or oftener, if required by the Treasurer. That being the case, a renewal bond by the bank at the time requested by Treasurer Day was not even required by the statute. How, then, could the bank discontinue its relation as State depository by merely declining to execute a bond, which, at that time, was not absolutely necessary? Furthermore, the bank continued to act as depository from January 1, 1900, until July 1st of the same year, the time during which it is sought in this action to charge it with interest. As a matter of fact, therefore, it was a State depository during that time. Its

continuing to act as depository absolutely refutes the
idea that it intended to discontinue its relation with
the State by refusing to execute the renewal bond in
question. If, then, the bank continued to act as de-
pository, what was the effect of its refusal to execute
the bond upon its contract to pay interest? The
statute provides that: ''The depositories selected
shall each pay to the Commonwealth, in proportion
to the deposits received, interest at such ɪate per
annum as may be agreed upon between the Treasurer
and the depositories upon the average daily deposits
on hand at the close of banking hours, the same to
be paid to the Treasurer at the end of each six
months, commencing with the date of the deposit.''
Thus it will be seen that each depository must pay
interest. A depository cannot act as such without
obligating itself to pay some rate of interest. There
is no escape from this proposition. It is not con-
tended by the officials of the bank that the contract
is for a different rate than 2½ per cent. So far as
the record shows, the question of interest was never
mentioned after the execution of the bond in 1898.
Of course, the Treasurer and the bank might have
agreed upon a certain rate of interest for a specified
length of time and another rate for another period
of time during which the bank continued to act as
depository. This, however, was not done. We think,
therefore, the contract to pay interest at the rate ɔf
2½ per cent. per annum, in the absence of any agree-
ment to the contrary, continued so long as the bank
maintained its relation as depository.

Some point is made of the fact that there were two
claimants of the office of Treasurer, and that the
bank did not know how to relieve itself of its obli-
gation to pay interest otherwise than by refusing ɔo

State Nat. Bank v. Commonwealth.

execute renewal bond. Several methods, however, might have been adopted. The bank might have notified the de facto Treasurer, and asked that the State deposit be withdrawn; or it might have notified both claimants of the office of State Treasurer, then paid the money into court, and asked the court to adjudge to whom it should be delivered. Such action would have manifested a purpose on the part of the bank that could not have been misconstrued. It may be that the officials of the bank assumed that, by refusing to execute the bond offered to them for renewal, they absolved the bank from its contract to pay interest on the deposit, and that they did all that they believed the law required for the purpose of getting such relief; but the fact remains that they utterly failed to take the steps necessary for that purpose. A bank that has been designated as a State depository cannot relieve itself of its liability to pay interest by refusing to execute a renewal bond, if, as a matter of fact, it continues to act as such depository

For the reason given, the judgment is affirmed.