# LUSK STATE BANK v. TOWN COUNCIL OF LUSK

(No. 1914; December 10, 1935; 52 Pac. (2d) 413)

For the defendant and appellant there was a brief by *Thomas O. Miller,* of Lusk.

For the plaintiff and respondent there was a brief by *Joseph Garst,* of Douglas.

RINER, Justice.

The district court of Niobrara County rendered a money judgment against The Town Council of the Town of Lusk, an incorporated town under the laws of Wyoming, in an action wherein the party named was defendant and The Lusk State Bank, a banking corporation of this state, was the plaintiff. The record is before us through direct appeal proceedings instituted by defendant to secure a review of that judgment. The facts involved are very little in dispute and appear to be these:

October 1, 1928, the defendant issued its refunding bonds in the sum of $14,000.00, each of the denomination of $1,000.00 and bearing interest at the rate of five per centum per annum, payable semi-annually on the first days of April and October respectively. The bonds were made payable to bearer and in order to evidence the several installments of interest due thereon, had attached to them certain interest coupons, which could, as is usual in such matters, be cut off and presented for payment. The coupons due October 1, 1931, each stated that:

"ON THE FIRST DAY OF OCTOBER, A. D. 1931, the Town of Lusk, in the County of Niobrara and State of Wyoming, will pay to bearer TWENTY-FIVE and no/100 DOLLARS, in gold coin of the United States of America of or equal to the present standard of weight and fineness, at the Office of the Town Treasurer or at the Banking House of Kountze Brothers, in the City of New York, U. S. A. at the option of the holder, being six months' interest on its refunding bond dated October 1, 1928.

A. L. MILLER, Treasurer."

The bonds aforesaid are now held and owned by the plaintiff, which apparently purchased them about the date of their issuance. Prior to October 1, 1931, plaintiff had always collected the semi-annual interest due

it by detaching and sending in the proper coupons to the Banking House of Kountze Brothers, located in the City of New York, N. Y., where the defendant, through its Town Treasurer, customarily deposited funds in an amount necessary to pay them.

On October 1, 1931, also, the defendant had deposited the sum of $350.00 with the New York Banking House aforesaid, to meet the coupons then due. On October 13, 1931, Kountze Brothers failed and closed their doors to further business. The coupons representing the October installment of interest due on the bonds held by it as above recited, were not presented by the plaintiff to Kountze Brothers for payment until about December 30, 1931. Payment thereof was at that time refused and the coupons were returned to plaintiff, which during the month of January, 1932, presented them to the Town Treasurer of the Town of Lusk. Payment was again declined.

Additional facts involved in this litigation are that pursuant to its prior, due and legal application therefor, the plaintiff was on June 3, 1930, designated as the depositary of the public moneys of the Town of Lusk, and plaintiff properly qualified as such, having theretofore, on or about February 10, 1929, filed its surety company bond with the Town Treasurer for the safe-keeping of these funds; that thereafter, until and including February, 1932, the moneys of the Town were deposited and received by plaintiff; that some time in January, 1931, plaintiff's cashier, and also its president, notified the Mayor of the Town of Lusk that plaintiff would not pay interest on the Town's account after January 1, 1931, and told him also to withdraw the account. This fact is disputed, but there is substantial testimony in the record to support it when viewed in the light of the trial court's general finding in favor of plaintiff. It appears also that the further liability of the surety company bond aforesaid

was by the surety company duly terminated through a letter from it to the Lusk Town Treasurer and received by him October 12, 1931; that although demand was made about January 9, 1932, by the defendant that payment of interest be made, no interest was paid by plaintiff to the Town on account of the deposit of the Town's moneys during the period January 1, 1931, to and including February, 1932; that two per cent on the average daily balance of the account of the Town of Lusk with the plaintiff from January 1, 1931, to and including February, 1932, was the sum of $96.63; that prior to January 1, 1931, plaintiff had paid to defendant two per cent on the average daily balance in the Town's account with plaintiff; and that the Town's account was withdrawn from plaintiff about February, 1932.

February 21, 1934, plaintiff commenced its action to recover from the defendant the amount alleged to be due on the fourteen interest coupons mentioned above, as due October 1, 1931. The defendant filed its amended answer, which, together with sundry admissions and denials of the matters alleged in plaintiff's petition, asserted that Kountze Brothers was plaintiff's agent for the receipt, collection and transmission of the interest money which the defendant had deposited with said Banking House prior to the maturity of the interest coupons involved, and that plaintiff, by sending said coupons to Kountze Brothers, had exercised its option to collect them at that place and could not thereafter elect to collect said interest at the office of the Town Treasurer of the defendant. Defendant's pleading also contained an alleged counterclaim for damage in the sum of $350.00, alleged to have been suffered by it through plaintiff "having by its actions over a long period of years induced this defendant to believe, and this defendant believing, that said Banking House was the proper agency and the only place

that said holder of said coupons would receive the said interest; and this defendant relying on said belief so induced by plaintiff and having deposited, in due and timely manner, said sum for the sole and only purpose of paying said interest coupons as aforesaid."

The amended answer of the defendant additionally set out a cross-petition in its favor against plaintiff, based generally on the facts above detailed relative to the refusal on the part of plaintiff to pay interest on the Town moneys, during the period January 1, 1931, to and including February, 1932, in the Town's account with the plaintiff. Plaintiff's reply put in issue the allegations of new matter in the answer of the defendant, and the case proceeded to trial before the court without a jury.

The judgment rendered found generally for the plaintiff and adjudged that it recover from the defendant the sum of $420.51 and costs of suit, and further that defendant take nothing by its cross-petition.

The contention is advanced for appellant that because the plaintiff prior to October 1, 1931, had always collected the interest on the bonds it held by sending the coupons detached therefrom to the Kountze Brothers Banking House in New York City, it was "estopped from collecting them from the Town Treasurer," and also that as the money to pay the October, 1931, coupons was in New York at Kountze Brothers at the time the coupons became due, plaintiff's own laches and neglect prevented their collection, Kountze Brothers not having failed until thirteen days thereafter.

Having in mind the promise of the defendant as embodied in the language of the coupons aforesaid and quoted previously, that it would "on the 1st day of October, 1931," * * * "pay to bearer" the sum due thereon "at the office of the Town Treasurer or at the

Banking House of Kountze Brothers in the City of New York, U. S. A., at the option of the holder," the following authorities are pertinent:

After discussing the nature of bonds with attached interest coupons, in Hamilton v. Wheeling Public Service Company, 88 W. Va. 573, 107 S. E. 401, 21 A. L. R. 433, the court characterizes such coupons as are here involved thus:

"To facilitate the quality of negotiability it is customary to attach to the principal obligation coupons containing promises to pay to the bearer, at stated intervals, interest on the debt. Each coupon bears upon its face its maturity date, and the entire series, maturing periodically, covers and provides for the interest on the bond until its maturity. Like it, these coupons themselves possess qualities of negotiability from hand to hand after detachment from the bond or other evidence of indebtedness of which they are a part. Each coupon contains its own obligation and promise to pay. Its attachment to the parent bond has no significance except for the purpose of identification. It adds nothing to the completeness of the obligation to pay the amount stated on the coupon on the date specified. * * * *

"With practical uniformity and unanimity the judicial opinion is that such instruments are not mere incidents of the principal debt to which they are attached, but themselves represent separate and distinct contracts for the payment of money when due according to their terms, and, like other promises of a similar character, bear interest after default in payment."

In City of Aurora v. West, 7 Wall. 82, 19 L. Ed. 42, it is also said:

"Bonds and coupons like these, by universal usage and consent, have all the qualities of commercial paper. [Mercer Co. v. Hackett, 1 Wall., (68 U. S.) 83, 17 L. Ed. 548; Meyer v. Muscatine, 1 Wall., (68 U. S.) 384, 17 L. E. 564.] Coupons are written contracts for the payment of a definite sum of money, on a given day, and being drawn and executed in a form and mode for the very purpose that they may be separated

from the bonds, it is held that they are negotiable, and that a suit may be maintained on them without the necessity of producing the bonds to which they were attached. [Knox Co. v. Aspinwall, 721 How. (62 U. S.) 539, 16 L. Ed. 208; White v. Railroad, 21 How. (62 U. S.) 575, 16 L. Ed. 221; McCoy v. Co. of Wash., 7 Am. Law Reg., 193; Pars. Bills & N., 115.] Interest, as a general rule, is due on a debt from the time that payment is unjustly refused, but a demand is not necessary on a bill or note payable on a given day. [Vose v. Philbrook, 3 Story, 336; Hollingsworth v. Detroit, 3 McLean, 472.] Being written contracts for the payment of money, and negotiable because payable to bearer and passing from hand to hand, as other negotiable instruments, it is quite apparent on general principles that they should draw interest after payment of the principal is unjustly neglected or refused."

Later the same court also remarked in Nesbitt v. Independent District of Riverside, 144 U. S. 610, 36 L. Ed. 562, that:

"Each matured coupon is a separable promise, and gives rise to a separate cause of action. It may be detached from the bond and sold by itself. Indeed, the title to several matured coupons of the same bond may be in as many different persons, and upon each a distinct and separate action be maintained. So, while the promises of the bond and of the coupons in the first instance are upon the same paper, and the coupons are for interest due upon the bond, yet the promise to pay the coupon is as distinct from that to pay the bond, as though the two promises were placed in different instruments, upon different paper."

Where the form of the interest coupon involved was: "35 THE INDIANAPOLIS, BLOOMINGTON AND WESTERN RAILWAY COMPANY will pay the bearer, at its agency in the city of New York, thirty-five dollars, in gold coin, on the 1st day of April, 1871, for semi-annual interest on bond No................... A. P. LEWIS, Secretary," considering its legal effect, this was said in Evertson v. National Bank of Newport, 66 N. Y. 14:

"The coupons of the Indianapolis, Bloomington and Western Railway Company are, in terms distinct promises to pay the bearer the amount specified therein at a day and place named, and are, within the authorities, promissory notes for the payment of money to the holder, and transferable by delivery, although detached from the bonds to which they refer. The fact that they are declared to be for interest upon bonds specified by their numbers, does not destroy their negotiability when separated from the bond, or impair the title of one purchasing from another without production of the bond."

As indicating that there is somewhat of a distinction to be made between coupons of the character under consideration and an original promissory note see: Kenosha v. Lamson, 9 Wall. 477, 486, 19 L. Ed. 725, and Chaffee v. Middlesex R. Co., 146 Mass. 224, 235, 16 N. E. 34. See also Edwards v. Bates County, 163 U. S. 269, 41 L. Ed. 155; Sears v. Greater New York Development Co., 51 Fed. (2d) 46; Perry v. Norddeutscher Lloyd, 150 Misc. Rep. 73, 268 N. Y. Sup. 525.

But however such interest coupons be regarded—whether as independent promises or as merely incident to the principal debt—it seems to be clear from the current of authority that their presentation for payment is not necessary to fasten a liability upon the party issuing them, and that when funds are deposited by such party with a banker to pay them, and the latter fails, the loss must fall on the debtor despite the fact that the holder of the coupons has not presented them promptly for payment at maturity,—in short, that the banker in such case is the agent of the debtor and presentment for payment when due is not necessary to save the debtor's liability.

One of the earlier cases illustrating the application of these principles is Williamsport Gas Company v. Pinkerton, 95 Penn. St. 62. There it appeared that

Pinkerton held a coupon bond issued by the Williamsport Gas Company, to which was attached a coupon reading:

"The Williamsport Gas Company will pay the bearer at the banking house of Kirk, MacVeagh & Co., West Chester, Pa., on the first day of December 1875, twenty dollars, being six months' interest on bond No. 18.

"$20                          "T. Coryell, Treasurer."

The debtor sent a remittance to the banking house in ample time to pay this coupon and others from other bonds at their maturity. All coupons were paid by the banking house which were presented to it prior to December 22, 1875. On that day it suspended business and made an assignment to creditors. Pinkerton did not present his coupon before the bank failed. However, he thereafter demanded payment on account of it from the Gas Company at its office. Payment thereof being refused he sued to recover the amount due on it. Affirming the judgment in his favor, the Supreme Court of Pennsylvania said:

"The corporation which issues a coupon bond is in the position of a maker of a promissory note, not of the drawer of a check or bill of exchange. There is no obligation on the holder to present and demand it within a reasonable time. The same rule applies to the coupons as to the bond. In fact he may hold on to the coupons just as long as he can hold on to the bond without requiring payment. The coupon is nothing but an acknowledgment of interest due, and it is but an incident of the principal. It is attached to the bond and may be detached from it for the convenience of the holder. The possession by the corporation is evidence of its payment. The banking house at which it was made payable were the agents of the corporation, and the holder could not lose in any event by their insolvency."

A recent decision of similar character and one quite closely resembling in its facts the case at bar is John

K. & Catherine S. Mullen Benev. Corporation v. School District No. 17-H of Big Horn County, Montana, (Mont.) 43 Pac. (2d) 902. The facts summarized were: The School District in 1921 had issued seventy-five bonds, payable to bearer, each for $1,000.00, bearing six per cent interest, due semi-annually, January 15th and July 15th. This interest was evidenced by attached coupons made payable at the office of the County Treasurer or at the banking house of Kountze Brothers in New York City. Plaintiff in March, 1929, became the owner of fifty-five of these bonds. Money to pay said coupons was always sent by the County Treasurer to Kountze Brothers, and plaintiff, during its ownership of the bonds, always deposited the coupons when due in a Denver bank, which forwarded them to Kountze Brothers for payment. Prior to July 15, 1931, all coupons were thus paid. May 23, 1931, the County Treasurer sent to Kountze Brothers sufficient money to meet the next July 15th coupons. Plaintiff did not deposit with the Denver bank its coupons then due until October 6, 1931. They were not presented in New York City to Kountze Brothers until after the latter's failure on October 13, 1931. They were then returned to the Denver bank, which sent them to the County Treasurer of Big Horn County for payment, which was by that official declined. Plaintiff sued to recover the $1650.00 and interest alleged to be due on these interest coupons. Reversing a judgment in defendant's favor, instructing a judgment in plaintiff's favor, as prayed, and upholding plaintiff's contention that as the School District had made the coupons payable at Kountze Brothers that banking house was its agent and was responsible for its agent's default, the court quoted from a previous decision (Kalman v. Treasure County, 84 Mont. 285, 275 Pac. 743, 746) and commented also thus:

" 'The interest coupons in question are made payable to bearer; hence pass by delivery and possess all the qualities and incidents of commercial paper. * * * It is the universal rule that, where commercial paper is made payable at a particular bank, such is the agent of the maker and not the holder, the holder not having deposited it at the designated bank for collection.' To the same effect is United States National Bank v. Shupak, 54 Mont. 542, 172 P. 324. This rule is supported by the great weight of authority everywhere." (Citing authorities.)

To the defendant's contention that plaintiff by virtue of a long course of dealing had made Kountze Brothers its agent, the court responded:

"There was never any direct dealing of any kind between plaintiff and Kountze Brothers, except the fact of the transmittal of coupons to it for payment. This cannot be construed as constituting Kountze Brothers the agent of plaintiff, because the district, in the first instance, had made that bank the place of presentment and payment, so that the mere presentation of the coupons there was only equivalent to presenting them direct to the county treasurer."

Replying to the further contention of the defendant that if the plaintiff had been diligent in presenting the coupons for payment, it would have suffered no loss and that its laches in that respect should not be charged to the defendant, the court further said:

"Such contention and the authority cited in support thereof might be very forceful if the paper in question had been checks or bills of exchange, rather than interest coupons. The interest coupons were, in effect, promissory notes. See section 8591, Id., and note; also, Perry v. Norddeutscher Lloyd, 150 Misc. 73, 268 N. Y. S. 525, and 9 C. J. 49, and cases cited. The law is well settled that the maker of such instruments is not discharged from liability through neglect or delay on the part of the holder in making presentment for payment. (Citing authorities.) It must be remembered that there is a distinction between checks and notes. While the liability of the drawer of a check is

secondary, the maker of a note is primarily liable, so far as the necessity of presentment for payment is concerned. Cashion Gin Co. v. Reisch, 144 Okl. 169, 289 P. 701. 'The person 'primarily' liable on an instrument is the person who, by the terms of the instrument, is absolutely required to pay the same. All other parties are 'secondarily' liable.' Section 8403, Rev. Codes 1921. 'Presentment for payment is not necessary in order to charge the person primarily liable on the instrument.' Section 8477, Id.

"In accordance with the foregoing statutes which are embodied in the Uniform Negotiable Instruments Law, it has been uniformly held that the holder of a negotiable promissory note does not have to make presentment of the same in order that he may have a right of action against the party primarily liable. (Citing authorities.)

"The interest coupons involved here being in effect negotiable promissory notes, and defendant school district being the party primarily liable thereon, plaintiff is not foreclosed from recovery because it failed to present them to the bank before it became bankrupt. The bank was not the agent of plaintiff. It is obvious that if it can be said to have been the agent of any one in this transaction, it must, under the authorities to which we have already adverted, be held to have been the agent of defendant."

See also Mayor and City Council of Nashville v. First National Bank, 1 Baxt. (Tenn.) 402; Lemieux Bros. Co., Inc. v. Tropical Clothing Mfg. Co., 17 La. App. 5, 134 So. 432; Binghampton Pharmacy v. First National Bank, 131 Tenn. 711, 176 S. W. 1038, 2 A. L. R. 1377 and cases cited in note page 1381; First National Bank v. Jersey Central Power & Light Co., 115 N. J. Equity 242, 170 Atl. 209; Kalman v. Treasure County, 84 Mont. 285, 275 Pac. 743; Cosmopolitan Trust Co. v. Leonard Watch Co., 249 Mass. 14, 143 N. E. 827; Federal Intermediate Credit Bank v. Epstin, 151 S. Car. 67, 148 S. E. 713; Adler v. Interstate Trust and Banking Co., 166 Miss. 215, 146 So. 107.

In the case at bar the holder of the coupons, according to their terms, had the option to present them either to the Town Treasurer of the Town of Lusk or to the Banking House of Kountze Brothers. This option was accorded the holder by the express contract of the Town. The contract was never changed. That the plaintiff, previous to October 1, 1931, had always seen fit to send the coupons to New York for payment did not and could not alter the Town's promise aforesaid. Nothing appears in the contract to indicate that the holder of the coupons would not be allowed at any time the coupons matured to take advantage of the other optional alternative and present them for payment to the Town Treasurer.

In Beeching v. Gower, 3 E. C. L. 129, a note was made payable at Tunbridge and likewise at London, and it was held that the plaintiffs had the option to present it at either place and that it was no defense, in support of the contention that the holder was guilty of laches in presenting it at London, to prove that if payment had been demanded at Tunbridge, which was the more convenient and nearer place, the bill would have been paid.

Again, where a bill of exchange was made payable at either bank in Providence, demand was made at one of them. It was urged for defendants that this was not sufficient because the plaintiff had not previously given them notice where the demand would be made, but the court in Jackson v. Packer, 13 Conn. 342, said: "It seems, that the legal construction given to such contract, is, that the bill will be paid at either of the banks which the holder may select. North Bank v. Abbot, 13 Pick. 465."

It is manifest that an option such as given the holder of the coupons under consideration added to the marketable character of both the bonds and coupons, making for convenience in collecting interest, and could

hardly be withdrawn after sale of the bonds to the plaintiff. We quite fail to see that the matter should be controlled by any principles of estoppel in *pais*. Plaintiff in the presentation of the coupons it held at the Town Treasurer's office merely did what defendant had promised it might do. Under the principles declared by the authorities heretofore cited, we must hold that the Town is liable upon the coupons presented to its Treasurer for payment and not paid.

Complaint is made that the court allowed interest on the coupons from October 1, 1931. This we think was incorrect, for as stated in 33 C. J. 235: "According to the weight of authority, coupons or installments of interest bear interest only from the time of a demand made after their maturity." Interest should have been computed only from January, 1932, when the coupons had been presented to Kountze Brothers and the Town Treasurer and payment refused.

The claim of the defendant under its cross-petition is based upon the provisions of Sections 92-116 to and including 92-121 W. R. S. 1931, which generally speaking provide for the selection of depositaries for municipal funds, their safe-keeping and the payment of interest thereon to the municipalities by such depositaries. The facts appearing in the record relative to this branch of the case have already been given. It is insisted that plaintiff should have been adjudged liable for the interest computed at two per cent on the average daily balance of the Town's account in The Lusk State Bank during the period January 1, 1931, to and including February 2, 1932, that amount being the stipulated sum of $96.63 before mentioned.

By Section 92-118 supra, any bank incorporated under the laws of the State of Wyoming or any national bank doing business in the county where the municipality is located, may apply to be designated as depositaries in which treasurers of municipalities may keep

public funds, the designation of such to be made by the "proper governing board." That board in the present instance was the Mayor and Council of the Town of Lusk. (§ 92-116 supra.) Section 92-119, supra, provides:

"Such applications by such banks shall be submitted to the proper governing board on or before the first Monday of April of each year, and shall be acted upon by the proper governing board on the said first Monday of April of each year, or as soon thereafter as practicable, and said board shall also at said time fix the rate of interest, which said rate shall go into effect on May 1st following and shall not be changed for one year, and no moneys shall be deposited by any such treasurer except in such banks as have been approved by the said proper governing board."

The concluding sentence of Section 92-121, supra, which also particularly deals with the point now under consideration, reads:

"Where there are no banks in the county, or where the banks in the proper county refuse or fail to bid on said money, or refuse or fail to receive the said funds under the provisions of this chapter then part or all of said money may be deposited, under the conditions of this chapter in any other bank in the state, selected by the proper governing board of the county, city, town, or school district, as the case may be."

In the case at bar The Lusk State Bank not only made no application at the commencement of the year 1931 to be designated as a depositary of the Town funds, but the Mayor of the Town was explicitly told by the plaintiff's executive officials that they did not want the account and that it should be taken elsewhere. Consequently as soon as it became clear that the bank would no longer act as depositary under the provisions of the law governing such matters, it became the duty of the Town Treasurer to at once withdraw the money and place it in some other place, which had been properly designated as a depositary. Section 92-121, supra,

so indicates and Section 92-123 W. R. S., 1931, expressly declares:

"Whenever funds remain on hand which cannot be placed in the banks of the respective counties of this state under the provisions of this chapter, then the proper treasurer shall immediately notify the chairman of the proper governing board, which said board shall immediately thereupon hold a meeting and if possible secure other banks in the state to hold said funds under the provisions of this chapter. During the time that funds cannot be deposited in the banks entitled thereto under the provisions of this chapter, the proper treasurer shall hold said deposits in safe keeping, and shall be liable on his official bond for such funds so held."

As said in Grants Pass & Josephine Bank v. City of Grants Pass et al., 145 Ore. 624, 28 Pac. (2d) 879: "Undoubtedly every bank has the right to determine for itself whether it will accept a deposit or not, and, unless controlled by some contrary rule of banking or statute, it has the right to agree upon the terms upon which the deposit shall be accepted." To the same effect is 7 C. J. 628, Section 303.

It is suggested that the defendant was not bound by the notice given the Mayor of the Town to the effect that the Town's account was not wanted by plaintiff and that the trial court committed error in permitting conversation on the subject between the bank officials and the Mayor to be detailed in evidence. We cannot accept this view of the matter. The Mayor was a member of the "proper governing board," which had by law full charge of the selection of depositaries for the town funds, and he was, of course, the chief executive officer of the Town. We think under such circumstances the notice given him of the plaintiff's refusal to longer serve as a depositary of the town funds should ordinarily be imputed to the Town. McCartney v. City of Washington, 124 Ia. 382, 100 N. W. 80; Daniels v. Iowa City, 188 Ia. 1012, 177 N. W. 42; Pitts-

burgh etc. R. Co. v. Chicago, 144 Ill. App. 293, affirmed 242 Ill. 178, 89 N. E. 1022; 43 C. J. 1207, § 1974; 19 R. C. L. 1044, § 332.

However, the Town account was left in plaintiff bank and deposits of town moneys were thereafter voluntarily and without objection received by the bank until April 6, 1931. Therefore, the action of the bank was to say the least, equivocal as to whether it desired to continue under the law as a town depositary. On the date last mentioned, as it had not only failed to apply to be designated as such depositary in the manner the statutes required, but had declined to pay the town any interest on the deposited funds, it was then perfectly clear to everyone concerned that it had elected to act no longer in its former capacity. State National Bank v. Commonwealth, 129 Ky. 637, 112 S. W. 678.

We think accordingly the plaintiff bank should be held to be legally bound to pay interest on the average daily balance of the town funds on deposit with said bank until April 6, 1931. But to hold The Lusk State Bank liable under the facts as presented at bar for interest on the Town's account, beyond the date last mentioned, would as we see the matter, be to burden it with a contract it neither made, nor had imposed upon it by law, a liability it never assumed and which was within its rights to decline to undertake. These views are expressed, however, solely upon the facts appearing in this case and the contentions of the parties advanced thereon.

We conclude then that the judgment of the district court should be modified in the matter of computation of interest on the coupons aforesaid and interest on the town funds, as noted above. As thus modified it should be affirmed.

*Modified and Affirmed.*

KIMBALL, Ch. J., and BLUME, J., concur.

BLUME, Justice.

I would not want to be understood as holding at this time, that a holder of a coupon may not, at times, be held to be negligent in presenting it for payment, so that the loss thereof will fall on him. That point has been mentioned only incidentally, and is not involved herein. In this case the contract provided that the coupons might be presented, and would be paid, in either one of two places. This part of the contract was not carried out when the coupons were presented to the Town Treasurer in Lusk.